The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

John Richard RICKMAN, Defendant–Appellant.

No. 04CA0501.

Colorado Court of Appeals, Div. III.

April 20, 2006.

Rehearing Denied June 15, 2006.

John W. Suthers, Attorney General, Roger G. Billotte, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Curtis V. Smith, Stephen C. Cook, Littleton, Colorado, for Defendant–Appellant.

LOEB, J.

Defendant, John Richard Rickman, appeals the judgment of conviction entered upon jury verdicts finding him guilty of two counts of violation of bail bond conditions. We reverse.

On May 21, 2002, defendant, who was charged with a felony, appeared in county court with counsel for a bond hearing. The court ordered, "Bond will be set in the amount of $25,000 cash, property, or surety with pretrial services supervision. No contact with the victims or any witnesses. Also no unsupervised visitation with children." At the bond hearing, the county court did not articulate or impose any other conditions of defendant's bail bond. The court also imposed a restraining order on defendant.

Immediately after the bond hearing, defendant met with a representative of Jefferson County Pretrial Services and signed a pretrial services release agreement acknowledging that, as a condition of bond, the court had placed him on pretrial supervision and reflecting certain conditions of his release on bond, including no possession of weapons.

Defendant posted bond on May 24, 2002 and signed an appearance bond form acknowledging various statutorily mandated bond conditions.

Defendant next met with his pretrial services case manager on May 29, at which time he signed a printed form that stated the terms and conditions of supervision under pretrial services while on bond, among which were, as pertinent here, that he would not possess any weapons and that he would not violate any state or federal laws or municipal ordinances.

In November 2002, while on bond and under pretrial services supervision, defendant went to a gun shop and told the clerk that he was interested in purchasing a .22 caliber Remington rifle. The clerk handed the rifle to defendant, who held and examined it for about ten minutes. After inspecting the rifle, defendant informed the clerk that he wanted to purchase it. Defendant filled out a Bureau of Alcohol, Tobacco and Firearms "Firearms Transaction Record." On this form, defendant falsely affirmed that he was not under indictment or information in any court for a felony or any other crime for which the judge could imprison him for more than one year and that he was not subject to a court order restraining him from harassing, stalking, or threatening his child or an intimate partner or child of such partner.

The clerk contacted the Colorado Bureau of Investigation (CBI) to process the information on the form, and the CBI rejected the transaction. Defendant left the gun shop without the rifle.

As a result of filling out the firearms acquisition form, defendant was indicted in federal court on a felony charge for violating 18 U.S.C. § 922(a)(6), specifically, for making a false statement on a firearms acquisition form. Defendant pleaded guilty to the federal charge and was sentenced to one year of probation.

Defendant was then charged in Jefferson County District Court with two class six felony counts of violating a condition of bail

bond, pursuant to § 18–8–212(1), C.R.S.2005. Count one alleged that defendant violated the bond condition prohibiting possession of weapons, and count two alleged that he violated the bond condition prohibiting his violation of any state or federal law. Defendant was also charged with a misdemeanor for violating a restraining order.

At trial, after the prosecution had rested, defendant moved for judgment of acquittal on all charges. The trial court denied the motion as to the two felony charges, but granted the motion as to the misdemeanor charge. The jury returned a verdict of guilty on both felony counts.

After the verdict, defendant moved for judgment of acquittal notwithstanding the verdict on the two felony charges, which motion the trial court denied. The trial court sentenced defendant to two fifteen-month sentences in the Department of Corrections, to be served concurrently, and to twelve months mandatory parole. This appeal followed.

■ When a motion for judgment of acquittal is made at the close of evidence or after the jury verdict, "the correctness of the trial court's ruling is determined from the state of all the evidence." *People v. Noga*, 196 Colo. 478, 480, 586 P.2d 1002, 1003 (1978). A judgment of acquittal is inappropriate if the evidence is "legally sufficient to support a finding of guilt by a reasonable person beyond a reasonable doubt." *People v. Parks*, 749 P.2d 417, 421 (Colo.1988). "[T]here are certain circumstances under which the trial court cannot allow the jury's conclusion to stand, because a conviction based upon a record lacking any relevant evidence is constitutionally infirm." *People v. Sprouse*, 983 P.2d 771, 776 (Colo.1999). In ruling on a motion for a judgment of acquittal after a guilty verdict has been returned, a trial court must consider all the evidence, both that presented by the prosecution and by the defense, and evaluate the evidence as a whole and in the light most favorable to the prosecution. *People v. Parks, supra*, 749 P.2d at 420–21.

### I.

■ Defendant contends the trial court erred by denying his motions for judgment of acquittal and for judgment of acquittal notwithstanding the verdict as to the two felony counts, because the two bond conditions he was charged with violating were not specifically ordered by the county court, and pretrial services acted ultra vires and without statutory authority in imposing those bond conditions. Accordingly, defendant contends his felony convictions for violating those bond conditions must be reversed. We agree.

When interpreting a statute, a reviewing court should look first to the language of the statute, and the words and phrases therein should be given effect according to their plain and ordinary meaning. When a court construes a statute, it should read and consider the statute as a whole and interpret it in a manner giving consistent, harmonious, and sensible effect to all its parts. *People v. McIntier*, 134 P.3d 467 (Colo.App. 2005).

■ The primary function of a bail bond is to assure the presence of the accused, and this end should be met by means which impose the least possible hardship upon the accused. *People v. Sanders*, 185 Colo. 153, 522 P.2d 735, 736 (1974).

■ The court is responsible for setting the amount, type, and conditions of a bond. *See* § 16–4–103, C.R.S.2005; *Howard v. City & County of Denver*, 837 P.2d 255, 257 (Colo. App.1992). Pursuant to § 16–4–105(1), C.R.S.2005, in determining the nature of a bond, the judge shall consider and be governed by a number of relevant criteria, including the nature and extent of the defendant's family relationships, the defendant's prior criminal record and appearances as required by other bonds or release conditions, and any facts indicating the possibility of violations of law or harassment of witnesses while the defendant is released on bond. *See Howard v. City & County of Denver, supra.*

Section 16–4–103(2), C.R.S.2005, sets forth certain mandatory conditions of every bail bond, which do not include the two bond conditions at issue in this case. Section 16–4–103(2) further provides:

[T]he judge may impose such additional conditions upon the conduct of the defendant as will, in the judge's opinion, render it more likely that the defendant will fulfill the other bail bond conditions. These additional conditions may include submission of the defendant to the supervision of some qualified person or organization.

■ However, nothing in the language of § 16–4–103(2) allows the court to delegate to another person or organization the authority to order and set the terms and conditions of a bail bond.

Section 16–4–105(3)(b), C.R.S.2005, provides that any county or city and county may establish a pretrial services program, pursuant to a plan formulated by a community advisory board. The types of services and the functions of pretrial services programs are specified by statute. *See* § 16–4–105(3)(a)–(d), C.R.S.2005.

An examination of the statutory provisions concerning pretrial services programs reveals that the functions of such a program are to assist and inform the court responsible for fixing the amount of bail and type of bond. *Howard v. City & County of Denver, supra; see* § 16–4–105(3)(c) (pretrial services program shall provide such information to the judge who is setting the amount of bail and type of bond "as will provide the court with the ability to make a more appropriate initial bond decision which is based upon facts relating to the defendant's risk of danger to the community and the defendant's risk of failure to appear for court"); *see also* § 16–4–105(3)(a) (upon order of chief district court judge, pretrial services program shall make a recommendation to the court regarding "whether there should be a pretrial release of any particular defendant").

Pursuant to § 16–4–105(3)(d), "Any pretrial services program may also include different methods and levels of community-based supervision as a condition of pretrial release. The program may use established supervision methods for defendants who are released prior to trial in order to decrease unnecessary pretrial incarceration." These methods include various forms of contact with the defendant, treatment and counseling programs, and monitoring of the defendant. *See* § 16–4–105(3)(d).

Here, the record shows that, at the bond hearing on May 21, the county court set a bond of $25,000, "with pretrial services supervision." The only conditions specifically imposed by the court were "no contact with the victims or any witnesses" and "no unsupervised visitation with children." The Pretrial Services Release Agreement, signed by defendant later that day, specified conditions of random urinalysis and breathalyzers, no consumption of alcoholic beverages, no illegal drug use or possession, and no possession of weapons. However, there is nothing in the record indicating that this document was signed by the court or made an order of the court in this case.

The appearance bond, signed by defendant on May 24, included the following statutorily mandated conditions:

1) [Defendant] may not leave the state without the approval of the Court and the surety;
2) [Defendant] shall not commit a felony while at liberty on bail;
3) [Defendant] acknowledges the existence of a mandatory restraining order under C.R.S. § 18–1–1001;
4) [Defendant] shall immediately notify the Court of any change of mailing address or residence.

The bond also included handwritten supplemental conditions, not mandated by statute or court order, that during the pretrial period there could be "no alc[ohol]/weapons/drugs." The record does not reflect who wrote these supplemental conditions on the bond form.

The record further shows that on May 29, defendant met with his pretrial services case manager and reviewed a form entitled Pretrial Services Terms and Conditions of Bond. The case manager explained the first nine conditions on the form to defendant, who placed his initial next to each condition. Those conditions were as follows:

1. I will appear in court when required or be subject to bond forfeiture and other criminal penalties as specified in the Colorado Revised Statutes. I understand

that I am also required to appear at the Pretrial Services Office after each scheduled court appearance in this case.

2. I will not violate any state or federal laws or municipal ordinances.

3. I will notify Pretrial Services immediately if I am arrested on any new charges or receive a summons of any type, including traffic citations.

4. I will report to Pretrial Services as often as the Court or Pretrial Services requires.

5. I will maintain residence while on bond and will not change residence without notifying Pretrial Services.

6. I will seek and maintain employment. I agree to notify Pretrial Services within 24 hours if I am fired, laid off or resign from any employment.

7. I will not leave the State of Colorado without the written consent of the Court.

8. I will abstain from the excessive use of intoxicants, or any use of drugs unless prescribed for me by my doctor. I also agree to submit to toxicology testing.

9. I will be truthful and cooperative.

The tenth condition on the form was entitled "Special Conditions," and of eleven possible options listed on the form, six were checked by the pretrial services program: random urinalysis, no consumption of alcoholic beverages, no driving without a valid license and insurance, random breathalyzer, no illegal drug use, and no possession of weapons. Defendant initialed condition ten, and he and his case manager signed the form, but it was not signed by the court, nor were any of the conditions on the form referenced in the court's bond order of May 21.

Under the circumstances present here, we agree with defendant and conclude that the pretrial services program exceeded its statutory authority by imposing additional conditions of bond that were not statutorily mandated or previously ordered by the court, specifically the two conditions which formed the basis for the charges against defendant in this case. In our view, the plain language of the statutory framework at issue here shows the General Assembly's clear intent that bond conditions are to be imposed by the court. The role and purpose of a pretrial services program is to provide information and recommendations to the court concerning whether to grant bond, and, if so, the amount and type of bond, and then to supervise and monitor a defendant released on bond prior to trial. *See Howard v. City & County of Denver, supra.* Nothing in the language of § 16–4–105(3), however, authorizes a pretrial services program to impose conditions of bond not otherwise ordered by the court or mandated by § 16–4–103(2).

We reject the People's argument that the testimony of County Court Judge Kim Goldberger, who conducted defendant's bond hearing, established that the Jefferson County pretrial services program was validly delegated the authority to impose bond conditions on defendant that were not reflected in the court's bond order.

At trial, Judge Goldberger testified that the function of the pretrial services program was to supervise defendants, including monitoring conditions set by the court and ensuring that defendants returned for their court appearances. He further testified that the pretrial services program's terms and conditions form was created by the pretrial services program and approved by the chief county court judge and that Jefferson County's county court judges, en banc, had delegated to the pretrial services program the authority to impose bond conditions on defendants through the use of this form. Judge Goldberger also testified that the first nine conditions on the form were standard conditions that the pretrial services program was authorized to impose on all defendants under its supervision, and that the county court judges had authorized the program to utilize, as appropriate in any given case, any or all of the special conditions under paragraph number 10 on the form in supervising criminal defendants.

However, notwithstanding Judge Goldberger's testimony, we discern nothing in the applicable statutory language that authorizes county court judges, either individually or as a group, to delegate to a pretrial services program the power to impose bond conditions on a defendant that are not mandated by statute or otherwise made an order of

court in any particular case. *See* §§ 16–4–103, 16–4–105(3); *see also People in Interest of B.C.*, 122 P.3d 1067, 1070–71 (Colo.App. 2005)(the Colorado Children's Code requires the trial court itself to make decisions regarding visitation, and it may not delegate this function to third parties); *People in Interest of D.R.V–A.*, 976 P.2d 881, 884 (Colo. App.1999); *cf.* § 16–4–105(3)(a) (where ordered by the chief district court judge, a pretrial services program may make a recommendation whether there should be a pretrial release of any particular defendant).

We recognize that, as a practical matter, county or district court judges, either individually or as a group, may develop and agree to use a standard set of bond conditions in all criminal cases and to utilize a pretrial services program to supervise defendants prior to trial. However, it is incumbent upon the court in each case to reference such standard bond conditions in its bond order, at least to the extent they go beyond the conditions mandated in § 16–4–103(2). Here, that reference was not made, and nothing in the record of defendant's bond hearing or the court's bond order indicates that the court imposed any of the bond conditions set forth in the pretrial services form.

Further, while we recognize that a defendant's failure to comply with a pretrial services program's conditions of supervision pursuant to § 16–4–105(3)(d) may result in revocation of the defendant's bond, we perceive nothing in the language of § 16–4–105(3)(d) that would authorize the pretrial services program to impose bond conditions, the violation of which, as is the case here, would subject a defendant to a felony prosecution under § 18–8–212(1).

Accordingly, we conclude that, because the pretrial services program was not authorized to impose the two bond conditions at issue here, the trial court erred by not granting defendant's motions for acquittal and that defendant's conviction for violating those conditions must be reversed.

## II.

Because of our resolution of this matter, we need not consider defendant's remaining contentions.

The judgment is reversed.

Judge TAUBMAN concurs.

Judge ROY specially concurs.

Judge ROY specially concurring.

I specially concur.

I write separately because I agree that the trial courts will, in all likelihood, prepare a form order imposing all the conditions now imposed through the pretrial services office. This procedure may be motivated, in part, by the time constraints under which an overworked judiciary must operate and, in part, by an institutional concern for the criticism that almost inevitably follows when a person on bail or probation commits another, and sometimes very serious, offense.

However, a person charged with a crime has a right to due process of law, which includes a presumption of innocence that abides until guilt has been proved beyond a reasonable doubt. Colo. Const. art. 2, § 25; *People v. Hill*, 182 Colo. 253, 512 P.2d 257 (1973). With a number of exceptions apparently not present here, the right to bail is of constitutional dimension. Colo. Const. art. 2, § 19. The United States Constitution protects citizens against excessive bail or cruel and unusual punishment. U.S. Const. amend. VIII.

The purpose of bail is to assure the presence of the defendant at subsequent proceedings, not to punish him or her. *L.O.W. v. Dist. Court*, 623 P.2d 1253 (Colo.1981); *see also In re Losasso*, 15 Colo. 163, 24 P. 1080 (1890). That purpose should be met by means that impose the least possible hardship upon the accused. *People v. Sanders*, 185 Colo. 153, 522 P.2d 735 (1974). I do not believe that the purpose of bond is to rehabilitate or treat an accused's problems, real or imagined. However, limitations and conditions may be appropriate if they are reasonably related to the charged offense and the character of the accused of which the court is apprised.

The briefs do not inform us as to the underlying offense with respect to which defendant was on bond. Therefore, I do not

know whether the conditions that defendant not possess a firearm or consume alcohol were at all related to the pending allegations or defendant's circumstances.

However, I can envision a person charged with a nonviolent offense, without any evidence that he or she has an alcohol problem, bonding out under the no alcohol consumption conditions, being observed having wine at a restaurant or beer at a sporting event, being charged with a felony for breaching a condition of the bond, being acquitted of underlying charges, and, nevertheless, being prosecuted and convicted for the breach of the condition of the bond. Some would say a prosecutor in the exercise of his or her sound discretion would not pursue such a conviction. There was a time when I might have believed that. I am no longer confident.

Certainly here, defendant's possession of the unloaded rifle was brief, supervised, not a threat to anyone, and maybe innocent, even though the misrepresentations he made in the attempted purchase, for which he was separately convicted, were not so innocent.

Therefore, in my view, the restrictions placed on a person free on bond, in addition to those required by statute, should be imposed by the court and tailored to the charged offense, the surrounding circumstances, and the character of the accused. This tailoring will require the trial court to use discretion specific to each case. A preprinted form signed by the judge which automatically imposes broad and perhaps irrelevant terms and conditions is not likely to assure the exercise of that discretion.