The PEOPLE of the State of Colorado, Petitioner

v.

John Richard RICKMAN, Respondent.

No. 06SC454.

Supreme Court of Colorado, En Banc.

March 3, 2008.

Rehearing Denied March 24, 2008.*

* Justice EID does not participate.

John W. Suthers, Attorney General, Roger G. Billotte, Assistant Attorney General, Appellate Division, Criminal Justice Section, Denver, Colorado, Attorneys for Petitioner.

Smith & Cook, LLC, Curtis V. Smith, Stephen C. Cook, Littleton, Colorado, Attorneys for Respondent.

Justice MARTINEZ delivered the Opinion of the Court.

## I. Introduction

John Richard Rickman was convicted by a jury of two counts of violating a bail bond condition. One of the bond conditions at issue prohibited Rickman from possessing weapons and the other condition required that Rickman not violate any state or federal laws while released on bail bond. Since neither of the two conditions Rickman violated were ordered by the judge during Rickman's bail bond hearing, but were instead added by the pretrial services program based on bond condition forms preapproved by the trial court, the court of appeals reversed Rickman's conviction on both counts. *See People v. Rickman*, 155 P.3d 399, 403–04 (Colo.App. 2006). We granted the People's petition for certiorari to review whether the court of appeals erred in its decision.

We now affirm the judgment of the court of appeals in part and reverse it in part. The condition barring Rickman from possessing weapons was neither mandated by statute nor imposed by the trial court. Because the trial court could not delegate the discretion to impose such a condition to the pretrial services program, the pretrial services program exceeded its statutory authority by imposing that condition. Accordingly, we affirm the court of appeals' reversal of Rickman's conviction for violating the bond condition barring Rickman's possession of weapons.

However, we conclude that section 16–4–103(2)(c), C.R.S. (2007), prohibited Rickman from committing a felony while at liberty on bail bond, and therefore the pretrial services program did not exceed its authority by including that prohibition as a condition of Rickman's bail bond. Consequently, we hold that the court of appeals erred in reversing Rickman's conviction on that count, and we therefore reverse the court of appeals' ruling in part.

## II. Facts and Procedural History

On May 21, 2002, while in custody pending the filing of charges for a felony offense, Rickman appeared in Jefferson County Court for a bond hearing. Judge Goldberger, the county court judge presiding over the hearing, set bail at $25,000 and ordered that Rickman be supervised by a pretrial services program. The judge did not impose any other conditions of Rickman's bail bond.

Immediately after the hearing, Rickman met with a representative of Jefferson County Pretrial Services. At the meeting, Rickman signed a Pretrial Services Release Agreement ("Release Agreement"). The Release Agreement advised Rickman that the judge had placed Rickman on pretrial supervision and that Rickman had to report to the pretrial services program upon release from custody. The Release Agreement, which the

Jefferson County Court judges, en banc, had approved for use by the pretrial services program, contained a pre-printed list of ten "Conditions of Bond." Next to each condition, the pretrial services representative indicated whether that condition was in fact imposed on Rickman. In Rickman's Release Agreement, the following conditions were checked: random urinalysis/breathalyzers; no consumption of alcoholic beverages; no illegal drug use or possession. The Release Agreement contained an additional condition—no possession of weapons—written in by hand and marked as applicable to Rickman.[1] The Release Agreement was signed by Rickman and the representative of the pretrial services program. The judge did not sign this document or incorporate it as an order of the court.

On May 24, 2002, Rickman posted a bond and signed an Appearance Bond form. The Appearance Bond explained that as a primary condition of the bond, Rickman had to appear in court for scheduled proceedings. The form also acknowledged various statutorily mandated bond conditions, including one

stating that Rickman must not commit a felony while released on bond. Moreover, the form included hand-written "Supplemental Conditions," not mandated by statute or court order, which specified Rickman could have "no alc[ohol]/weapons/drugs."[2] Upon posting the bond, Rickman was released from custody.

Five days later, on May 29, 2002, Rickman met with his pretrial services case manager, Bryan Moats. At the meeting, Moats reviewed with Rickman a printed form entitled Pretrial Services Terms and Conditions of Bond ("Bond Conditions Form"), which had also been approved by the Jefferson County Court judges. The Bond Conditions Form contained nine pre-printed bond conditions, one of which read: "I will not violate any state or federal laws or municipal ordinances." Rickman initialed each of the nine conditions. The tenth condition on the Form was entitled "Special Conditions" and listed eleven possible bond conditions. Six of those conditions were checked as applicable to Rickman, including "no possession of weapons."[3] Rickman initialed the tenth condition

---

1. Thus, the pertinent part of the Release Agreement read:
   CONDITIONS OF BOND:
   (X) Random Urinalysis/Breathalyzers
   (X) No consumption of Alcoholic Beverages
   (X) No Illegal Drug Use or Possession
   ( ) No Driving w/o valid license/insurance
   ( ) Defendant to have no contact with
   _____

   *(X) No poss weapons* [hand-written]
   ( ) Mental Health Evaluation/Treatment
   ( ) Drug and Alcohol Evaluation/Treatment
   ( ) Domestic Violence Evaluation/Treatment
   ( ) Electronic Monitoring
   ( ) Other _____
   _____

   (emphasis added).
2. Specifically, the Appearance Bond stated:
   ADDITIONAL STANDARD CONDITIONS: (1) Party may not leave the state without the approval of the Court and the surety; (2) *Party shall not commit a felony while at liberty on bail;* (3) Party acknowledges the existence of a mandatory restraining order under C.R.S. § 18–1–1001; (4) Party shall immediately notify the Court of any change of mailing address or residence. *SUPPLEMENTAL CONDITIONS:*
   PreTrial; *no alc/weapons/Drugs* [hand-written]. (emphasis added).
3. Thus, the relevant part of the Bond Conditions Form read:

*[JR]* 1. I will appear in court when required or be subject to bond forfeiture and other criminal penalties as specified in the Colorado Revised Statutes. I understand that I am also required to appear at the Pretrial Services Office after each scheduled Court appearance in this case.
*[JR]* 2. I will not violate any state or federal laws or municipal ordinances.
*[JR]* 3. I will notify Pretrial Services immediately if I am arrested on any new charges or receive a summons of any type, including traffic citations.
*[JR]* 4. I will report to Pretrial Services as often as the Court or Pretrial Services requires. *M/W/F 303–271–6500.* [hand-written]
*[JR]* 5. I will maintain residence while on bond and will not change residence without notifying Pretrial Services.
*[JR]* 6. I will seek and maintain employment. I agree to notify Pretrial Services within 24 hours if I am fired, laid off or resign from any employment.
*[JR]* 7. I will not leave the State of Colorado without the written consent of the Court.
*[JR]* 8. I will abstain from the excessive use of intoxicants, or any use of drugs unless prescribed for me by my doctor. I also agree to submit to toxicology testing upon the request of Pretrial Services and understand that it is my responsibility to pay for these services, as ordered by Pretrial Services and the Court.
*[JR]* 9. I will be truthful and cooperative.

as well. In addition to listing the conditions of the bond, the Bond Conditions Form notified Rickman that a violation of any of the bond conditions could result in additional charges being filed against him. Both Rickman and Moats signed the Bond Conditions Form. However, the Form was not signed by a judge or incorporated into a court order.

In November 2002, while he was still on bond and under pretrial services supervision, Rickman visited a gun shop and inspected a .22 caliber Remington rifle. After examining the rifle for about ten minutes, Rickman told the store clerk that he would like to purchase the rifle and filled out a Bureau of Alcohol, Tobacco and Firearms "Firearms Transaction Record." In this firearms-acquisition form, Rickman falsely stated that he was not under indictment or information in any court for a felony.

Per procedure, the store clerk contacted the Colorado Bureau of Investigation ("CBI") to process the form. The CBI rejected the transaction, and Rickman left the gun shop without the rifle. Due to his false statements on the firearms-acquisition form, Rickman was later indicted on a felony charge in federal court for violating 18 U.S.C. § 922(a)(6) by making a false statement on a firearms-acquisition form. Rickman pled guilty to the charge and was sentenced to one year of probation.

As a result of the federal felony conviction and his ten-minute inspection of the rifle at the gun shop, Rickman was charged in Jefferson County District Court with two counts of violating a condition of bail bond, a class six felony, pursuant to section 18–8–212(1), C.R.S. (2007). Count one alleged Rickman violated the bond condition prohibiting his possession of weapons. Count two alleged Rickman defied the bond condition requiring that he not violate any state or federal law.[4]

At trial on the bail bond condition violations, a jury found Rickman guilty on both counts. Rickman moved for judgment of acquittal notwithstanding the verdict, and the trial court denied the motion. The court then sentenced Rickman to two concurrent fifteen-month sentences in the Department of Corrections and to twelve months of mandatory parole.

Rickman challenged his conviction on appeal. He argued that the trial court erred in denying his motion for acquittal because the two bond conditions at issue were not ordered by the court and because the pretrial services program exceeded its statutory authority in imposing those conditions. *See Rickman,* 155 P.3d at 401. The court of appeals reversed Rickman's conviction on both counts, reasoning that while the statute gave the trial court the authority to set terms and conditions of bail bond, the court could not delegate such authority to another entity. *Id.* at 402–04. Since the trial court did not impose either of the bond conditions Rickman violated, the court of appeals concluded that "the pretrial services program exceeded its statutory authority by imposing additional conditions of bond that were not statutorily mandated or previously ordered by the court." *Id.* at 403. Thus, the court of appeals held that the trial court erred when it denied Rickman's motion for acquittal. *Id.* at 404.

We granted certiorari to review the court of appeals' decision, and we now affirm in part and reverse in part.[5]

---

*[JR ]* 10.  SPECIAL CONDITIONS:
X   Random Urinalysis
X   Random Breathalyzer
X   No Consumption of Alcoholic Beverages
X   No illegal drug use
___   Alcohol/Drug Evaluation and Treatment
___   Mental health Eval/TX
___   Domestic Violence Treatment
___   Monitored Antabuse
___   X No Driving w/o valid license and insurance
___   *X No possession of weapons*
___   Defendant to have no contact with _____ except for Defense Counsel and/or agents of Defense Counsel

___   Other: _____
(emphasis added).

4.  Rickman was also charged with violation of a restraining order, a class one misdemeanor, pursuant to section 18–6–803.5, C.R.S. (2007). The charge was dismissed at trial.

5.  We granted certiorari on the following issue: Whether the court of appeals erred in reversing the defendant's convictions on two counts of violation of bond when it concluded that pretrial services acted ultra vires and without statutory authority in imposing those bond conditions.

### III. Analysis

The trial court has the authority to make bail bond decisions, subject to limitations imposed by statute. *See People v. Sanders*, 185 Colo. 153, 156, 522 P.2d 735, 736 (1974). Therefore, we first examine the statutory provisions concerning pretrial release on bail bond. Statutory interpretation is a question of law that we review de novo. *Mishkin v. Young*, 107 P.3d 393, 396 (Colo. 2005). When the statutory language is unambiguous, we give effect to the plain and ordinary meaning of the statute without resorting to other rules of statutory construction. *Stamp v. Vail Corp.*, 172 P.3d 437, 442–43 (Colo.2007).

When a person in custody first appears in court, the judge sets the amount of bail, the type of bond, and conditions of bond. § 16–4–103(1)(a), (2), C.R.S. (2007).[6] Section 16–4–103(2) imposes certain conditions on every bail bond. Pertinent to the issue before us, the statute requires that the defendant "not commit any felony while at liberty on [the] bail bond." § 16–4–103(2)(c). Thus, this condition applies to all bail bonds and the judge has no discretion as to whether to impose this condition. *See id.*

In addition to the conditions prescribed by the statute, the judge may impose additional bond conditions:

> In addition to the conditions specified in this subsection (2), *the judge may impose such additional conditions* upon the conduct of the defendant as will, *in the judge's opinion*, render it more likely that the defendant will fulfill the other bail bond conditions. These *additional conditions may include submission of the defendant to the supervision of some qualified person or organization.*

§ 16–4–103(2)(f) (emphasis added). Thus, a judge may order that, as a condition of the bond, the defendant be supervised by a pretrial services program.

Pretrial services programs, established by a county or a city and county, serve two main functions. First, a pretrial services program assists the judge in making bail bond decisions. § 16–4–105(1)(q), (3), C.R.S. (2007). To that end, the program screens defendants and provides the judge with information necessary for the judge to make a more appropriate bail bond determination. § 16–4–105(3)(c)(I).

Second, where the judge orders pretrial services supervision as a condition of the bond, a pretrial services program supervises defendants by using "established supervision methods" set forth in section 16–4–105(3)(d). *See* §§ 16–4–103(2)(f), –105(3)(d). Section 16–4–105(3)(d) provides:

> Any pretrial services program may also include different methods and levels of community-based supervision as a condition of pretrial release. The program *may use established supervision methods* for defendants who are released prior to trial in order to decrease unnecessary pretrial incarceration. The program *may include any of the following conditions for pretrial release or any combination thereof:*
>
> (I) Periodic telephone contact with the defendant;
>
> (II) Periodic office visits by the defendant to the pretrial services program;
>
> (III) Periodic home visits to the defendant's home;
>
> (IV) Periodic drug testing of the defendant;
>
> (V) Mental health or substance abuse treatment for the defendant, including residential treatment;
>
> (VI) Domestic violence counseling for the defendant;
>
> (VII) Electronic or global position monitoring of the defendant; and
>
> (VIII) Pretrial work release of the defendant.

(emphasis added). Thus, the pretrial services program is statutorily authorized to implement court-ordered pretrial supervision through the imposition of one or more supervision methods described in section 16–4–105(3)(d).

---

6. For convenience, we cite to the current version of the Colorado Revised Statutes. The statutes are unchanged in all relevant portions.

In short, bond conditions are either mandated by statute or may be imposed by the judge. *See* § 16–4–103(2). The judge may utilize a pretrial services program in making bail bond decisions, but the program's role is limited to assisting the judge before he or she sets bail and imposes conditions of bond and to supervising defendants where the judge ordered supervision. *See* § 16–4–105(1)(q), (3)(a), (c), (d). To carry out court-ordered pretrial supervision, a pretrial services program may require that the defendant submit to any of the methods of pretrial supervision listed in section 16–4–105(3)(d).[7] However, the statute does not anticipate or permit a judge to delegate the judge's authority to set conditions of bond to a pretrial services program. *See* §§ 16–4–103, –105.

■ Absent statutory authorization, a court may not delegate its authority to set bond conditions. Taking bail and setting the amount of bail are incident to the court's power to hear and determine cases. *Sanders*, 185 Colo. at 156, 522 P.2d at 737. Necessarily, the discretion to set conditions of a bail bond is also a part of the court's judicial function. *See* § 16–4–103(2)(f) (*"The judge may impose* such *additional conditions* upon the conduct of the defendant as will, *in the judge's opinion*, render it more likely that the defendant will fulfill the other bail bond conditions."*) (emphasis added). Therefore, just as a court may not delegate its power to set bail, it may not hand over its authority to determine the conditions of the bail bond. *See Bottom v. People*, 63 Colo. 114, 120, 164 P. 697, 700 (1917) ("The allowance of bail and fixing the amount thereof are judicial acts, and, in the absence of [a] statute [providing] otherwise, the court or judicial officer vested with such power cannot delegate it to another."); *see also Sapero v. State Bd. of Med. Exam'rs*, 90 Colo. 568, 577, 11 P.2d 555, 558 (1932) ("[C]ourts cannot delegate their judicial duties.").

Likewise, a pretrial services program may not assume authority not granted to it by statute. *See Bd. of County Comm'rs v. Love*, 172 Colo. 121, 125, 470 P.2d 861, 862 (1970) (noting that a county and its commissioners possess only such powers as are expressly conferred upon them by the constitution and statutes); *People ex rel. Dunbar v. Dist. Court*, 127 Colo. 280, 285, 255 P.2d 743, 746 (1953) (stating that powers of state officials and employees are limited to authority expressly provided by statute governing their actions). Actions of a pretrial services program assuming authority not granted to it by statute are a nullity. *People ex rel. Dunbar*, 127 Colo. at 285, 255 P.2d at 746.

Thus, while nothing prohibits a judge from utilizing a form to impose bail bond conditions, he or she may use it only in a manner that does not delegate the discretionary authority involved in setting bond conditions to the pretrial services program or another entity.

With these principles in mind, we now turn to the conditions of Rickman's bond. We first address the condition barring the possession of weapons and then turn to the condition requiring that Rickman not violate any state or federal laws.

### A. No Possession of Weapons

■ During Rickman's bail bond hearing, the judge did not prohibit Rickman from possessing weapons. Instead, the prohibition was later imposed by the Release Agreement, the Appearance Bond, and the Bond Conditions Form. In the Release Agreement, signed by Rickman and a representative of the pretrial services program at a meeting following the bail bond hearing, this condition was written in by hand. The Appearance Bond, which Rickman signed upon his release from custody three days after the bail bond hearing, likewise included a handwritten "no weapons" condition under the heading "supplemental conditions." On the Bond Conditions Form, signed eight days after Rickman's hearing, Rickman's pretrial services case manager selected "no possession of weapons" as one of the "special conditions" applicable to Rickman. The judge did not sign any of these documents or incorporate them as the order of the court.

---

7. The defendant's non-compliance with such supervision methods may amount to a violation of the bond condition requiring that the defendant be supervised by a pretrial services program.

A prohibition against possession of weapons is not a bond condition mandated by statute. *See* § 16–4–103(2)(a)–(e). Although a judge may impose such a condition under his authority to impose additional bond conditions, *see* § 16–4–103(2)(f), here Judge Goldberger did not order that Rickman not possess any weapons. The only condition Judge Goldberger imposed was pretrial supervision of Rickman.

The People argue that because the Jefferson County Court judges preapproved the conditions of bond contained in the Release Agreement and the Bond Conditions Form, the pretrial services program merely performed a ministerial function in selecting which of the preapproved conditions would apply to Rickman and therefore did not exceed its statutory authority. We disagree.

At Rickman's trial on the bail bond conditions violations, Judge Goldberger testified about the court's practices for setting bond conditions. The judge explained that the Jefferson County Court judges, en banc, had approved both the Release Agreement and the Bond Conditions Form and provided them to the pretrial services program to impose bond conditions. With respect to the Bond Conditions Form, Judge Goldberger testified that the judges had authorized all conditions contained in the Form, including those listed as "Special Conditions." By approving both forms, the judges intended to enable the pretrial services program to select the appropriate bond conditions for defendants released on bond.

Selecting appropriate conditions from a list preapproved by the court necessarily required the pretrial services program to exercise discretion. Even though the Jefferson County Court judges preapproved the prohibition against possessing weapons as a possible bond condition, the pretrial services program had a choice whether to impose that condition on Rickman. Nothing in the forms or Judge Goldberger's testimony suggests that the court directed the pretrial services program with respect to the terms of Rickman's bond. Because the discretion inherent

in imposing bond conditions is a judicial function that the court may not delegate, the Jefferson County Court judges lacked the authority to grant the pretrial services program the power to determine which of the preapproved bond conditions should apply to Rickman. Therefore, the use of preapproved Release Agreement and Bond Conditions Form did not authorize the pretrial services program to bar Rickman's possession of weapons.

Nor did the pretrial services program have the authority to prohibit Rickman from possessing weapons as a condition of his pretrial supervision. While it was the task of the pretrial services program to carry out the pretrial supervision ordered by the judge, the methods of supervision that the pretrial services program may use are limited by section 16–4–105(3)(d). *See* 16–4–105(3)(d) (setting out the methods of supervision that the pretrial services program may impose). Since prohibiting the possession of weapons is not one of the methods of pretrial supervision listed in that provision, a pretrial services program may not impose such a requirement. *See People ex rel. Dunbar*, 127 Colo. at 285, 255 P.2d at 746 (holding that state officials may not act beyond the authority conferred by applicable statutes).[8]

Because a court may not delegate the discretion to impose conditions of bail bond to the pretrial services program and because the statute does not give the pretrial services program the authority to prohibit Rickman from possessing weapons, we hold that the pretrial services program exceeded its statutory authority when it imposed the condition barring Rickman from possessing weapons. Accordingly, we affirm the court of appeals in part.

### B. No Violation of State or Federal Laws

■ The Appearance Bond stated that Rickman must not "commit a felony while at liberty on bail," and the Bond Conditions Form prohibited Rickman from "violat[ing] any state or federal law or municipal ordi-

---

8. Of course, a judge presiding over a defendant's bail bond hearing may order such a condition or direct the pretrial services program to impose such a condition if it would make it more likely that the defendant will comply with other bail bond conditions. *See* § 16–4–103(2)(f).

nances." While he was released on bond, Rickman committed a felony under federal law.

Section 16–4–103(2)(c) requires that, as a condition of every bail bond, "the released person not commit any felony while at liberty on such bail bond." Thus, a judge fixing the conditions of a defendant's bond does not have any discretion whether to impose this condition. Instead, the statute makes this prohibition a mandatory condition of every bail bond.

Because the prohibition against commission of a felony is statutorily mandated, it constituted a condition of Rickman's bond regardless of any action by the judge or the pretrial services program. By including this condition in the Bond Conditions Form, the pretrial services program did not *impose* that condition on Rickman, but merely reiterated a prohibition that was already a part of Rickman's bond by operation of section 16–4–103(2)(c). By the same token, if the Bond Conditions Form did not contain this condition, Rickman would have been prohibited from committing a felony nonetheless.[9] Consequently, we need not address Rickman's argument that the "imposition" of the condition by the pretrial services program violated the separation of powers.

We hold that because section 16–4–103(2)(c) prohibited Rickman from committing a felony while released on bail bond, the pretrial services program did not exceed its authority when it included this condition in the Bond Conditions Form. Accordingly, we reverse the court of appeals in part.

### IV. Conclusion

We hold that the pretrial services program exceeded its authority when it barred Rickman from possessing weapons, but that it did not exceed its authority by including as a condition of Rickman's bail bond that he not commit a felony, a prohibition mandated by statute. Accordingly, we affirm the judg-

ment of the court of appeals in part and reverse it in part.

Justice EID does not participate.

---

9. We emphasize that notice to the defendant is, of course, required even where a condition of bail bond is imposed by operation of the statute. Here, the Appearance Bond and the Bond Conditions Form clearly notified Rickman that he must not commit a felony while released on bond.