2014 COA 122

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Zachariah M. JONES, Defendant–Appellant.**

**Court of Appeals No. 14CA1046**

Colorado Court of Appeals, Div. A.

Announced September 11, 2014

Mitchell R. Morrissey, District Attorney, Robert J. Whitley, Chief Appellate Deputy District Attorney, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Jud Lohnes, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by JUDGE BERNARD

¶ 1 In this felony case, the trial court set bond for defendant, Zachariah M. Jones. He posted the bond, and the jail released him from its custody. While he was free on bond, a second court found that there was probable cause to believe that he had committed another felony. Based on that finding, the trial court revoked his release on bond in this case, and it ordered that the jail hold him without bond until this case was resolved.

¶ 2 Do we have jurisdiction over defendant's petition that asks us to review the trial court's decision to revoke his release on bond? We answer that question "no," and we therefore dismiss the petition for review.

## I. Background

¶3 Denver police officers laid the first paving stone in the road to this appellate proceeding when they arrested defendant in mid–October 2013. He allegedly possessed crack cocaine. He posted a $10,000 bond the next day, and the jail released him. Denver prosecutors filed felony charges based on the arrest about five days later.

¶4 At the beginning of February 2014, while in Adams County, defendant allegedly shot his brother in the leg with a handgun. Armed with a warrant, Aurora police officers arrested him. He posted a $10,000 bond. Adams County prosecutors later charged him with second degree assault.

¶5 Also in early 2014, Denver prosecutors charged defendant with attempted first degree murder and first degree assault. These charges arose out of events that allegedly occurred in 2011. A court set the bond in that case at $100,000. Defendant posted that bond, too.

¶6 At the end of February 2014, a Denver prosecutor filed a motion to "Revoke Bond Pursuant to [section 16–4–105(3), C.R.S. 2013]" in the Denver crack cocaine case. The motion also stated that the prosecution was required to provide defendant with "reasonable notice of application for modification of bond" pursuant to section 16–4–109(3), C.R.S.2013.

¶7 The motion contained two basic assertions. First, an Adams County court had "found probable cause to believe" that defendant had committed the felony of second degree assault. The motion asked the court to revoke defendant's release on bond for that reason under section 16–4–105(3). *See* § 16–4–105(3) (court may revoke bond upon finding of probable cause to believe that defendant has committed a felony while released).

¶8 Second, the motion contended that "[d]efendant's position ha[d] changed for the worse[.]" He was now charged with "three pending felony cases as opposed to one." The result of convictions in all three cases would be "mandatory prison sentence[s]." Even if the respective courts imposed con-current sentences, defendant faced up to thirty-two years in prison.

¶9 A few days later, the prosecutor supplemented the motion with a copy of the arrest warrant in the second degree assault case that an Adams County magistrate had signed. It was accompanied by a lengthy affidavit that described the events surrounding the alleged crime.

¶10 The trial court held a hearing on the motion to revoke defendant's release on bond in early March 2014. Defendant, free on the three bonds, appeared.

¶11 The prosecutor told the trial court that the purpose of the motion was "to revoke [defendant's] bond in its entirety ... [to] have him held on a no-bond hold." After listening to arguments from both sides, the court concluded that section 16–4–105(3) gave courts discretion to revoke defendants' bonds and then to hold them in jail without bond. It added that the Adams County court had found probable cause to believe that defendant had committed a felony—shooting his brother—after the jail had released him on bond in the Denver crack cocaine case.

¶12 The court then, exercising its discretion, granted the prosecution's motion. It ordered the jail to hold defendant without bond until the crack cocaine case was resolved. The court observed that defendant placed "everyone[ ]" at risk if he remained free in the community.

¶13 The trial court issued a written order five days later. The order reiterated the court's conclusion that section 16–4–105(3) gave it "the power to revoke [defendant's] bond in this case."

¶14 Defendant filed a petition for review in this court at the beginning of June 2014, relying on section 16–4–204(1), C.R.S.2013. He asked us to "reverse" the trial court's decision to jail him without bond, and to order the trial court "to set bond in this case." The prosecution responded that we do not have jurisdiction over this case, but if we do, we should affirm the trial court's decision.

¶15 We ordered the parties to provide us with supplemental briefs addressing the issues more extensively.

## II. Jurisdiction

¶ 16 The prosecution contends that we do not have jurisdiction over this petition for review. This contention takes the form of a syllogism:

1. The court of appeals is a statutory court, and it has jurisdiction over appellate proceedings only if the legislature has given it jurisdiction.

2. Defendant filed this petition for review under section 16–4–204(1), which states that (a) a defendant may "seek review ... in the appellate court" for orders entered under sections 16–4–107 and 16–4–201, C.R.S.2013, "by filing a petition for review"; and (b) such a petition is "the exclusive method of appellate review" for orders entered under sections 16–4–104, C.R.S.2013, 16–4–107, and 16–4–201.

3. The statute under which the trial court entered its order – section 16–4–105(3)—is not mentioned in the statute under which defendant filed this petition for review – section 16–4–204(1).

4. Therefore, the court of appeals does not have jurisdiction over this petition for review.

¶ 17 We agree with the prosecution's position.

### A. General Principles

#### 1. Statutory Interpretation

¶ 18 The interpretation of a statute is a legal question, which we review de novo. *Hendricks v. People*, 10 P.3d 1231, 1235 (Colo.2000).

¶ 19 Our goal in interpreting a statute is to determine the legislature's intent. *Ceja v. Lemire*, 154 P.3d 1064, 1066 (Colo.2007). To make that determination, we look at the statute's language, and we give effect to its plain and ordinary meaning. *Id.* When construing the ordinary meaning of the language, we read the "statutory scheme" as a whole to "give consistent, harmonious, and sensible effect" to all the statute's parts. *Jefferson Cnty. Bd. of Equalization v. Gerganoff*, 241 P.3d 932, 935 (Colo.2010). If the plain and ordinary meaning of the language is clear, we interpret the statute as the legislature wrote it, and we enforce it as written. *Ceja*, 154 P.3d at 1066; *Carruthers v. Carrier Access Corp.*, 251 P.3d 1199, 1203 (Colo.App.2010).

#### 2. Our Jurisdiction

¶ 20 Colorado's Constitution established our supreme court, the district courts, and the county courts. Colo. Const. art. VI, § 1. But we are a creature of statute. *Id.* ("The judicial power of the state shall be vested in ... such other courts ... with jurisdiction inferior to the supreme court, as the general assembly may, from time to time establish[.]").

¶ 21 The legislature founded the present iteration of the Colorado Court of Appeals in 1969, and we began our work on January 1, 1970. Ch. 106, § 37–21–2, 1969 Colo. Sess. Laws 265; *Bill Dreiling Motor Co. v. Court of Appeals*, 171 Colo. 448, 451–54, 468 P.2d 37, 38–39 (1970); Barbara Bintliff, *A Jurisdictional History of the Colorado Courts*, 65 U. Colo. L.Rev. 577, 602 (1994).

¶ 22 The legislature defines our jurisdiction, too. *Musick v. Woznicki*, 136 P.3d 244, 249 (Colo.2006) (the legislature has "the authority to define the jurisdiction" of the court of appeals). So we "look to the language of jurisdictional statutes ... to discern the extent" of our jurisdiction. *Id.*

¶ 23 The legislature can modify a general grant of jurisdiction with "specific limitations." *People v. Owens*, 219 P.3d 379, 383 (Colo. App. 2009). But we "have no authority to expand [our] appellate jurisdiction [as] specified by" the legislature, *see Holdridge v. Bd. of Educ.*, 881 P.2d 448, 450–51 (Colo.App.1994), and we cannot "modify the jurisdiction granted [us] by statute." *People v. Meyers*, 43 Colo.App. 63, 64, 598 P.2d 526, 527 (1979).

¶ 24 Once the legislature establishes a statutory right of judicial review, "such review must be sought in strict compliance with the mandatory provisions of the statute," or the court does not have jurisdiction "to act." *Mile High United Way, Inc. v. Bd. of Assessment Appeals*, 801 P.2d 3, 5 (Colo.App.1990); *accord Barber v. People*, 127 Colo. 90, 95, 254 P.2d 431, 434 (1953)("[I]n an action which is

entirely statutory, the procedure therein prescribed is the measure of the power of the tribunal to which jurisdiction of causes arising under the statute is given.").

## B. History of the Pertinent Bond Statutes

¶ 25 The basic structure of our present-day bond statutes came into being in 1972. *See* Ch. 44, sec. 1, §§ 39–4–101 to –205, 1972 Sess. Laws 203–211. Section 39–4–204(1) authorized defendants to file petitions for review "in the appellate court" to appeal trial court orders issued under sections 39–4–104 ("Bail bond—alternatives"), 39–4–107 ("Reduction or increase of bail – change in type of bond"), or 39–4–201 ("Bail after conviction").

¶ 26 There was no analogue to today's section 16–4–105(3) in 1972. Section 39–4–103(2), which later became section 16–4–103(2), stated generally that the primary purpose of a bail bond was to ensure a defendant's appearance to answer the charges. But section 16–4–103(2) did not state that a court could revoke a defendant's release on bond if a court had found probable cause to believe that the defendant had committed another felony.

¶ 27 The legislature added that language to section 16–4–103(2) in 1979. The amended statute stated:

Further conditions of every bail bond shall be that the released person not commit any felony while at liberty on such bail bond and that the court in which the action is pending have the power to revoke the release of the defendant, to increase the bail bond, or to change any bail bond condition if it is shown that a competent court has found probable cause to believe that the defendant has committed a class 1, 2, 3, or 4 felony while released pending adjudication of a prior felony charge.

Ch. 156, sec. 2, § 16–4–103(2), 1979 Colo. Sess. Laws 662–63. (The legislature subsequently removed the reference to specific classes of felonies. Ch. 265, sec. 5, § 16–4–103(2), 1997 Colo. Sess. Laws 1553.)

¶ 28 The legislature significantly rearranged the bond statutes in 2013. Ch. 202, sec. 2–4, §§ 16–4–101 to –202, 2013 Colo. Sess. Laws 820–40. Two of those changes are pertinent here.

¶ 29 First, section 16–4–103(2) became section 16–4–105(3). Ch. 202, sec. 2, § 16–4–105(3), 2013 Colo. Sess. Laws. 826.

¶ 30 Second, the legislature renumbered section 16–4–107 to 16–4–109, C.R.S.2013, without making significant changes to its substance. Ch. 202, sec. 2, § 16–4–109 ("Reduction or increase of monetary conditions of bond—change in type of bond or conditions of bond—definitions"), 2013 Colo. Sess. Laws 830–31. Section 16–4–204(1), was *not* amended to reflect this change. But the parties agree that this omission was a "mere legislative oversight," and that we should read section 16–4–204(1) to include appeals from orders issued under today's section 16–4–109. *See* § 2–4–209, C.R.S.2013 ("A reference to any portion of a statute applies to all reenactments, revisions, or amendments thereof.").

¶ 31 The following chart shows, in chronological order, the historical development of the bond statutes that we have just described.

Basis of Appeal:

§16-4-204
and Related Statutes

Basis of Trial Court's
Order:

§16-4-105(3)
and Related Statutes

**1972: Bond Statutes Enacted**

§39-4-204
Appellate court may review orders entered
under subsections 104, 107, and 201

§39-4-103
Fixing of Bail

§39-4-104
Bail
Alternatives

§39-4-107
Reduction
or Increase
in Bail

§39-4-201
Bail After
Conviction

**1973: Statutes Renumbered**

§16-4-104

§16-4-107

§16-4-201

§16-4-103

**1979: §16-4-103(2) Amended**

§16-4-103(2)
Added condition
that released
person not
commit a felony
while on bond

**2013: Statutes Renumbered**

§16-4-109*

§16-4-105(3)

\* The parties contend that orders entered under §16-4-109
may be appealed under §16-4-204(1). We assume, for
the purposes of argument, that this is the case.

## C. Analysis

### 1. Plain Language

¶ 32 Defendant filed this petition for review relying on section 16–4–204(1), which, as we have noted above, authorizes our review of trial court orders issued under sections 16–4–104, 16–4–107, and 16–4–201. (We note that the legislature has amended sections 16–4–104 ("Types of bond set by the court") and 16–4–201 ("Bail after conviction") since 1972, but not in a way that materially affects our analysis.) Such petitions are "the exclusive method of appellate review" for orders that trial courts enter under those sections. § 16–4–204(1).

¶ 33 But the prosecution's motion to revoke defendant's bond relied on a statutory subsection—section 16–4–105(3)—that is not mentioned in section 16–4–204(1). Because it

is not mentioned, we conclude that a defendant cannot seek appellate review of an order issued under section 16–4–105(3) by filing a petition for review under section 16–4–204(1).

¶ 34 Even if we were to conclude that section 16–4–204(1) is ambiguous, we would reach the same conclusion because we would apply the canon of statutory construction *expressio unius est exclusio alterius* (the inclusion of one thing implies the exclusion of another). *See Farmers Ins. Exchange v. Allstate Ins. Co.*, 170 P.3d 847, 849 (Colo. App.2007).

¶ 35 This conclusion leads us to another: the legislature only gave us authority in section 16–4–204(1) to review trial court bond decisions based on sections 16–4–104, 16–4–107, and 16–4–201, *not* on a decision to revoke bond based on section 16–4–105(3). The legislature can place "specific limitations" on our jurisdiction, *see Owens*, 219 P.3d at 383, and it has done so here. We do not have "authority to expand [our] appellate jurisdiction" beyond the limits that the legislature has established, *see Holdridge*, 881 P.2d at 450–51, and we cannot "modify the jurisdiction" that the legislature has given us, *see Meyers*, 43 Colo.App. at 64, 598 P.2d at 527.

¶ 36 Indeed, once the legislature set up the petition for review process, we became obligated to ensure that parties seek such review in strict compliance with the mandatory provisions of the statute. *See Barber*, 127 Colo. at 95, 254 P.2d at 434. Without such strict compliance—and there is no strict compliance here—we do not have jurisdiction "to act." *Mile High United Way, Inc.*, 801 P.2d at 5; *cf. People v. Rodriguez*, 43 P.3d 641, 644 (Colo.App.2001) (court of appeals would not address the merits of the defendant's argument that the trial court had improperly revoked his bond before sentencing because he did not appeal that order under section 16–4–201(1), which established the sole method of appellate review of such orders).

¶ 37 Our conclusion does not leave defendant without a remedy. He may, if he wishes, seek our supreme court's discretionary review of the trial court's order under C.A.R. 21.

### 2. Defendant's Contention

¶ 38 Defendant contends that the resolution of this issue is not so simple. He submits that

1. section 16–4–105(3) did *not* give the trial court the authority to revoke his bond and order that he be held in jail without bond;

2. such authority is *only* found in section 16–4–109;

3. when the legislature renumbered the bond statutes in 2013, it moved section 16–4–107 to section 16–4–109; and

4. because section 16–4–109 is presently the same as the prior 16–4–107, section 16–4–204(1) authorizes his petition for review.

¶ 39 We disagree. (We note that defendant does not contend that any other statute, such as section 13–4–102(1), C.R.S.2013, with its reference to "final judgments," gives us jurisdiction over his petition for review. We obviously take no position on whether that statute would apply in this case. *See, e.g., Kauntz v. HCA–HEALTHONE, LLC*, 174 P.3d 813, 821 (Colo.App.2007).)

¶ 40 We will assume, for the purposes of this discussion, that (1) section 16–4–109 is the same as its predecessor section 16–4–107; and (2) section 16–4–204(1) gives us jurisdiction to review orders that courts issue under section 16–4–109. But this assumption does not help defendant win the day. We conclude that section 16–4–105(3) gives trial courts, and has always given them since its inception, a power to grant relief that is different from the relief described in section 16–4–109.

¶ 41 First, section 16–4–109 does not describe what courts can do if a court has found that there is probable cause to believe that a defendant has committed a felony while free on bond. Such a description appears only in section 16–4–105(3).

¶ 42 Second, Colorado appellate courts have consistently recognized a substantive difference between the predecessors to sections 16–4–105(3) and 16–4–109.

¶ 43 As early as 1983, the supreme court referred to the predecessor of section 16–4–

105(3). The court stated that "[b]ond revocation ... is permissible if some condition of the bond has been violated, including commission of a felony." *People v. Olds*, 656 P.2d 705, 707 n. 3 (Colo.1983), *overruled on other grounds by People v. Mascarenas*, 706 P.2d 404, 406 (Colo.1985).

¶ 44 Two years later, the supreme court in *Mascarenas* noted that there was a clear distinction between the predecessors to sections 16–4–105(3) and 16–4–109. The court addressed the accelerated speedy trial provision of the predecessor to section 16–4–105(3). (The legislature eliminated this provision in 2005. *See* ch. 128, sec. 1, § 16–4–103(2), 2005 Colo. Sess. Laws 423.) The court concluded that a trial court's decision to increase bond under the predecessor to section 16–4–109 did not trigger the accelerated speedy trial provision of the predecessor to section 16–4–105(3). *Mascarenas*, 706 P.2d at 406.

¶ 45 As recently as 2008, the supreme court stated that the predecessor to section 16–4–105(3) imposed "certain conditions on every bail bond," including the requirement that defendants not commit felonies while free on bond. *People v. Rickman*, 178 P.3d 1202, 1206 (Colo.2008). "[T]his condition applies to all bail bonds and the judge has no discretion as to whether to impose this condition." *Id.*; *see also People v. Soto–Gallegos*, 953 P.2d 946, 948 (Colo.App.1997) (the condition that defendants not commit felonies while on bond "is required in every bail bond").

¶ 46 Divisions of this court have likewise recognized a difference between the two statutes. For example, in *People v. Fields*, 697 P.2d 749, 754 (Colo.App.1984), the division, perhaps echoing the supreme court in *Olds* or anticipating it in *Mascarenas*, recognized that the predecessor to section 16–4–105(3) contained an accelerated speedy trial provision and that the predecessor to section 16–4–109 did not. Based on this difference, the division concluded that a motion filed under the predecessor to section 16–4–109 did not trigger the accelerated speedy trial provision under the predecessor to section 16–4–105(3). *See also People v. Gray*, 710 P.2d 1149, 1151 (Colo.App.1985)(citing *Fields* and concluding

that the predecessor to section 16–4–105(3) did not apply unless a court had found probable cause to believe that defendant had committed a felony while free on bond).

¶ 47 The divisions in *People v. Coleman*, 844 P.2d 1215, 1221 (Colo.App.1992), *People v. Marquez*, 739 P.2d 917, 918–19 (Colo.App. 1987), and *People v. Avery*, 736 P.2d 1233, 1235–36 (Colo.App.1986), reached similar results. *Marquez* and *Coleman* are particularly instructive.

¶ 48 In *Marquez*, the division reasoned that the speedy trial provision of the predecessor to section 16–4–105(3) did not "apply" because a trial court did not refer to it, or make a finding that the defendant had committed a felony "while on bond." *Marquez*, 739 P.2d at 918. Rather, the court had revoked defendant's bond because he had not appeared for trial.

¶ 49 In *Coleman*, the division observed that a defendant's bond "can be increased under two separate statutes," citing the predecessors to sections 16–4–105(3) and 16–4–109. *Coleman*, 844 P.2d at 1221. The predecessor to section 16–4–105(3) "applies only in that instance in which a bond is increased following a specific finding that the defendant, while free on that bond, committed a ... felony." *Id.* But, "[i]n contrast," the predecessor to section 16–4–109 "allows a district attorney to apply for an increase in a defendant's bail *in those situations not contemplated by* " the predecessor to section 16–4–105(3). *Id.* (emphasis added); *see Avery*, 736 P.2d at 1236 (The predecessor to section 16–4–105(3) "applie[d] only to a defendant whose bond is revoked or increased pursuant to it.").

¶ 50 But defendant contends that section 16–4–105(3) merely establishes one kind of bond condition, and that section 16–4–109 provides the sole method by which that bond condition can be revoked. We reject this contention because it is contrary to the plain language of both statutes. Section 16–4–109(1) states that a court may "increase or decrease the financial conditions" of a bond; "require additional security for a bond"; "dispense" with security for a bond; or "alter any other condition of the bond." There is

no statement, like there is in section 16–4–105(3), that a court can "revoke" a defendant's "release."

¶ 51 We therefore conclude, as our supreme court has and as various divisions of this court have, that there is a clear difference between these two statutes. That clear difference pertains to the relief that the legislature has empowered a court to grant in distinctly different circumstances. And because the relief that is at issue in this case—the trial court's decision under section 16–4–105(3) to revoke a defendant's release because the Adams County magistrate found that there is probable cause to believe that defendant committed a felony while he was on bond—is different from the relief that a court may grant under section 16–4–109, we conclude that the court's order in this case is not subject to appeal under section 16–4–201(1).

¶ 52 We note that a lot of legislative and judicial water has flowed under the bridge since 1979 when the legislature enacted the predecessor to section 16–4–105(3). We therefore presume that the legislature has "accepted and ratified the prior judicial construction[s]" that sections 16–4–105(3) and 16–4–109 and their respective predecessors authorize courts to impose different types of relief in different circumstances. *See People v. Swain,* 959 P.2d 426, 430–31 (Colo.1998); *Tompkins v. DeLeon,* 197 Colo. 569, 571, 595 P.2d 242, 243–44 (1979) ("When the legislature reenacts or amends a statute and does not change a statute previously interpreted by settled judicial construction, it is presumed that it agrees with [the] judicial construction of the statute.").

¶ 53 Despite this acceptance and ratification, the legislature has not seen fit to amend section 16–4–201(1) to include appeals of orders entered under section 16–4–105(3) and its predecessor. It is certainly free to exercise its prerogative to do so. But, until that time, we do not have jurisdiction over appeals such as this one.

¶ 54 Contrary to defendant's contention, *Stephenson v. District Court,* 629 P.2d 1078, 1079–80 (Colo.1981), does not compel a different result. We agree with him that our supreme court stated in that case that, when revoking or modifying bond, a trial court must comply with the requirements of "sections 16–4–101, et seq." *Id.* at 1079.

¶ 55 We disagree with his further assertion that *Stephenson* stands for the proposition that the *only* statute that provided a court with authority to revoke or modify bond was the predecessor to section 16–4–109. Although the supreme court analyzed the facts under the predecessor to section 16–4–109, the facts did not implicate the predecessor to section 16–4–105(3). Instead, the case involved a trial court decision to revoke a bond based on a "discrepancy" over whether the bond was a cash bond or a personal recognizance bond. *Id.* at 1078. The predecessor to section 16–4–105(3) was not mentioned.

¶ 56 *Stephenson* also does not undercut the supreme court's observations in *Olds, Mascarenas,* and *Rickman,* that specifically address the predecessor to section 16–4–105(3). Although *Olds* cited *Stephenson,* it was only for the proposition that "[b]ond revocation or increase is permissible if some condition of the bond has been violated, including commission of a felony, and the court makes such findings." *Olds,* 656 P.2d at 707 n. 3. The supreme court did not cite *Stephenson* in *Mascarenas* or *Rickman.* (And we note that the divisions in *Coleman, Marquez, Avery, Gray,* and *Fields,* did not cite *Stephenson,* either.)

¶ 57 Last, defendant contends that we have jurisdiction to resolve his petition for review under C.A.R. 9(a). But that is a rule of procedure that our supreme court, not the legislature, has promulgated.

¶ 58 Defendant directs us to *Stack v. Boyle,* 342 U.S. 1, 3–4, 72 S.Ct. 1, 96 L.Ed. 3 (1951), for the proposition that Fed. R.App. P. 9(a) authorizes broader appellate relief than federal statutes governing appellate review of bail orders. But the Court in *Boyle* observed that the order denying the defendant's request to reduce bail was an appealable order under a *federal statute. Id.* at 6, 72 S.Ct. 1.

¶ 59 And, although the United States Supreme Court is a constitutional court that exercises supervisory authority over federal courts, it has no such power over state

courts. *See Sanchez–Llamas v. Oregon,* 548 U.S. 331, 345–46, 126 S.Ct. 2669, 165 L.Ed.2d 557 (2006). We, on the other hand, are not a constitutional court, *see* Colo. Const. art. VI, § 1, and we do not have supervisory authority over Colorado's trial courts, *see Eichhorn v. Kelley,* 111 P.3d 544, 548 (Colo.App.2004) (court of appeals "has no supervisory authority over the state court system"). We must take our marching orders concerning the extent of our jurisdiction from the legislature. *See Musick,* 136 P.3d at 249.

¶ 60 More to the point, C.A.R. 9(a) concerns appeals "*authorized by law* from an order refusing or imposing conditions of release." (Emphasis added.) And we have concluded above that existing law does not authorize defendant's petition for review.

¶ 61 The appeal is dismissed.

CHIEF JUDGE LOEB and JUDGE CASEBOLT, concur.