No. 16,942.

BARBER *v*. THE PEOPLE.
(254 P. [2d] 431)

Decided February 16, 1953.

Mr. VICTOR A. MILLER, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. H. LAW-RENCE HINKLEY, Deputy, Mr. FRANK A. WACHOB, Assistant, Mr. JAMES D. PARRIOTT, JR., Assistant, for the people.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

PLAINTIFF in error was respondent in lunacy proceedings instituted in the county court of the City and County of Denver, Colorado. We will herein refer to her as respondent.

Although inquiries concerning the mental condition of respondent began some time prior to the events forming the basis of this case, we are concerned only with the legality of the proceedings which occurred on or subsequent to the 13th day of June, 1952. It is disclosed by the record that on that date one Florene Doyle filed in the county court her verified complaint in lunacy, in which she alleged that respondent: "(1) is so insane or distracted in her mind, as to endanger her own person or property, or the person or property of another, or others, if allowed to go at large; (2) is, by reason of old age, disease, weakness of mind, feebleness of mind or ........., incapable, unassisted to properly manage and take care of herself or her property, and therefore would be likely to be deceived or imposed upon by artful or designing persons; and prays that inquiry be had as provided by law."

The court immediately issued an order directing that respondent be taken into custody. Said order was directed to the sheriff and included the following: "You are, therefore hereby ordered to immediately take said Marie Barber into custody and until further order of this Court confine her in Mt. Airy Sanitarium, in the City and County of Denver, pending the determination of said inquiry." The sheriff executed this order and

made a return in which he stated that he had taken respondent into custody and confined her "in Colorado Psycho as herein directed." Upon being advised that respondent could not be admitted to Mt. Airy Sanitarium, he struck out the words "Mt. Airy Sanitarium" from the above order of court and inserted the words "Colo. Psycho," and made the same change in the copy of said order which was served on respondent.

A commission was appointed June 13, 1952, whose first session was to be held, as indicated by the order of court, at Mt. Airy Sanitarium on June 24th at 1:30 o'clock in the afternoon. On June 16th respondent was served with formal notice, issued by the clerk of the court, that said hearing would be held June 24th. As originally issued, the notice fixed the place and time of the hearing as, "Mt. Airy Sanitarium at 1:30 P.M." The sheriff struck out the designated place and time and substituted the single word "Psycho" for the place of the hearing and "2:00" P.M. as the time. William Mc-Glone as guardian ad litem was served with a copy of the notice in its altered form.

The hearing was continued until July 1st by an order entered pursuant to a letter, signed by the City Attorney and directed to the Clerk of the County Court, requesting same. This letter contained the statement, "The above is at the request of Mr. Emory Chilton, Attorney for the patient." When the continuance was granted another commission was appointed and the court ordered its first meeting to be held "at Mt. Airy Sanitarium, in the City and County of Denver, on the first day of July, 1952, at 1:45 PM," and Samuel Sterling was appointed guardian ad litem in place of Mr. McGlone. A new notice, of the time and place of said hearing, was served on respondent June 23rd and upon the guardian ad litem the following day. These notices contained the same alterations made by the sheriff which we have described in connection with the first notice issued.

June 24th the City Attorney directed a letter to the

Clerk of the County Court advising that respondent was "at the Colorado Psychopathic Hospital instead of Mt. Airy Sanitarium. Mrs. Barber will be seen by the Commission at Colorado Psychopathic Hospital on July 1, 1952." No formal order of court was entered changing the place for the first session of the commission from Mt. Airy Sanitarium to the Colorado Psychopathic Hospital. July 1st the commission met at the Colorado Psycopathic Hospital and the record discloses that respondent was present, and that the commission examined the following witnesses: Florene Doyle, who had signed the complaint in lunacy, Mrs. Augusta Anticiweck, Betty Riese, Dr. John Appleby, and Mr. Chilton and Mr. Miller who previously had acted as counsel for respondent and who represented her in the proceedings in the trial court. The report of the commission was that respondent was so insane or distracted in her mind as to endanger her own person or property or the person or property of another or others if allowed to go at large. On July 1st the county court entered an order of adjudication and commitment based on the report of the commission. July 3rd Victor A. Miller made written demand for a trial by jury upon the issues of respondent's mental condition. The said demand was over the signatures of Mr. Miller as a friend in behalf of respondent, and J. Emory Chilton as her attorney. On July 17th a motion was filed on behalf of respondent by Mr. Miller as her friend and Mr. Chilton as her attorney. Counsel in this motion challenged the sufficiency of the complaint in lunacy; questioned the regularity and legality of the hearing held by the commission, and all subsequent proceedings resulting in the adjudication and commitment of respondent; and requested her release.

A lengthy hearing was held on the motion; evidence was taken; and exhibits disclosed the changes made in the orders of court and notices as set forth above. In ruling on this motion the court said, inter alia: "There are, of course, a lot of things lacking in Chapter 105 con-

cerning the care of persons referred to therein, and it is commendable that counsel did discover and call the court's attention to the situation concerning the reckless changing of orders of the court by persons who are unauthorized. The reduction of the dignity of an order of the court is a serious matter and will be dealt with accordingly; and I can assure counsel, that matter having been called to the court's attention, appropriate action will be taken. I might say that it will be in the nature of corrective action, because I am convinced not only in this case, but because of my general knowledge of the handling of these matters, that there was no intent to destroy the effectiveness of a court order, but rather an effort to be practical, or what those persons thought was being practical, consistent with a bad practice and with an emergency situation." The court overruled the motion; dispensed with the necessity for a new trial of the issues raised thereby; and on its own motion fixed a time for a jury trial upon the issues of respondent's mental capacity, pursuant to the demand therefor which had been filed on her behalf. Counsel for respondent objected to such jury trial until this court should determine the correctness of the trial court's ruling on the motion challenging the legality of the proceedings of the commission. Jury trial has been postponed, apparently pending determination by this court of the legality of the trial court's judgment adjudicating respondent as an insane person and committing her to the State Hospital at Pueblo.

Questions to be Determined.

█ First: *In a lunacy proceeding under chapter 105, section 3, '35 C.S.A., in which the county court by order directs the sheriff to take into custody the respondent named in the complaint, and further directs that said respondent be confined in a specific sanitarium, and the sheriff without authority changes the order by interlining a place of confinement other than that ordered by the court and serves on respondent the altered in-*

*strument; does such conduct on the part of the sheriff invalidate the process and render all subsequent proceedings void?*

This question is answered in the affirmative. We must bear in mind that every person, including those suspected of being insane, has certain fundamental constitutional rights. Not the least of these is the one mentioned in Article II, section 7 of the Constitution of Colorado which provides, inter alia: "That the people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures; and no warrant to search any place or seize any person or thing shall issue * * * without probable cause, supported by oath or affirmation reduced to writing."

■ Respondent is restrained of her liberty in the instant case solely under the authority of the special statutory proceedings set forth in chapter 105, '35 C.S.A. Such proceedings must of course conform to the constitutional limitations upon the exercise of power contained in the Constitution of Colorado and that of the United States. While it is argued that in the instant case these constitutional limitations were violated in several ways, it is not necessary for us to pass upon those questions. It is sufficient for determination of this case to rely upon the well-established rule that, in an action which is entirely statutory, the procedure therein prescribed is the measure of the power of the tribunal to which jurisdiction of causes arising under the statute is given. There must be a strict compliance with the provisions of such a statute, which are mandatory, and in the absence of such compliance the court has no jurisdiction to act. This rule is especially applicable to a statutory proceeding, the object of which is to deprive a person of his liberty.

■ We think that the decisions in *Hultquist v. People,* 77 Colo. 310, 236 Pac. 995, and *Okerberg v. People,* 119 Colo. 529, 205 P. (2d) 224, control the instant case. In each of those cases our court held that a strict compliance with the procedure set forth in the lunacy statute

was mandatory. The trial court recognized that there had been "a reckless changing of orders of the court by persons who are unauthorized." Such conduct cannot be tolerated. The statute, by express provision, places upon the court the exclusive authority to designate the place of confinement of one whose sanity is questioned. Section 3, chapter 105, '35 C.S.A. provides, inter alia: " * * * said person shall be confined in a hospital or some other convenient or suitable place, *to be designated by the said court or judge* * * *." (Emphasis supplied.)

A person who is taken into custody under an order of court in lunacy proceedings must be confined in the place designated in the court order. Such person is entitled to receive service of a copy of the order actually entered by the court. Service of an instrument purporting to be a copy of a court order, which has been altered or changed by a sheriff or administrative official to better serve some asserted practical consideration, amounts in legal effect to service of nothing at all. Since a valid service upon the respondent of the actual order entered by the court, authorizing the seizure of respondent, is an essential prerequisite to the right of any commission to make inquiry into her sanity, it follows that the hearing, report of the commission, approval of report, adjudication and commitment of respondent are without legal force or effect.

Second: *In lunacy proceedings under a statute, which authorizes the appointment of a commission for the purpose of conducting hearings concerning the mental condition of a person whose sanity is questioned, and which further provides that the judge of the court appointing the commission, "must by order, fix the time and place for the first session of the commission," and directs that at least five days' notice of such time and place shall be given to the respondent, and where the sheriff alters the notice by changing the place and time for the holding of said first session of the commission;*

*does such conduct on the part of the sheriff invalidate the process and render all subsequent proceedings void?*

This question is answered in the affirmative. In view of the reasons assigned for an affirmative answer to the first question answered above, we are content to say that they apply with equal force to the question last above stated.

The orders of the trial court, approving the report of the commission which adjudicated the respondent to be an insane person and directed her committment, are reversed and set aside, and the cause is remanded with directions to dismiss the proceeding and discharge the respondent from custody.

MR. CHIEF JUSTICE STONE and MR. JUSTICE KNAUSS dissent.