2012 CO 28

In re ASSOCIATED GOVERNMENTS
OF NORTHWEST COLORADO,
Petitioner

v.

COLORADO PUBLIC UTILITIES COM-
MISSION; Joshua Epel, in his official
capacity as Chairman of the Colorado
Public Utilities Commission; and James
K. Tarpey and Matt Baker, in their offi-
cial capacity as members of the Colora-
do Public Utilities Commission, Respon-
dents.

Nos. 11SA224, 11SA225.

Supreme Court of Colorado,
En Banc.

April 23, 2012.

Rehearing Denied May 14, 2012.*

* Chief Justice Bender and Justice Rice would grant the Petition. Justice Marquez does not participate.

John W. Suthers, Attorney General, David A. Beckett, First Assistant Attorney General, Erin A. Overturf, Assistant Attorney General, Denver, Colorado, Attorneys for Respondents.

Paul M. Seby, Moye White LLP, Denver, Colorado, Attorneys for Petitioner.

Justice HOBBS delivered the Opinion of the Court.

¶ 1 Respondent Colorado Public Utilities Commission challenged the subject matter jurisdiction of the district court of Routt County to consider changing the venue in regard to a petition for judicial review, arguing that the petitioner failed to meet the requirements of section 40–6–115(1) and (5), C.R.S. (2011). Holding that section 40–6–115(5) pertained to venue, not jurisdiction, the Routt County District Court allowed a

transfer of the case to the District Court for the City and County of Denver. We issued a rule to show cause why the case should not be dismissed. We agree with the district court, and hold that section 40–6–115(5) mandates venue and does not limit jurisdiction. Accordingly, we discharge the rule. On remand, the Routt County District Court may transfer this case to the Denver District Court.

## I.

¶ 2 The Associated Governments of Northwest Colorado (AGNC) timely petitioned the Routt County District Court, in two cases, for a writ of certiorari or judicial review pursuant to section 40–6–115, C.R.S. (2011). AGNC wished to challenge orders of the Public Utilities Commission (PUC). The orders adopted in part an emission reduction plan of the Public Service Company of Colorado. AGNC alleged that the plan (1) was untimely filed in violation of the Clean Air Clean Jobs Act, §§ 40–3.2–201 to –210, 40–6–123(1), C.R.S. (2011), and AGNC's due process rights; (2) relied unlawfully on a determination of the Colorado Department of Public Health and Environment; (3) was arbitrary, capricious, and unsupported by evidence; (4) failed to adequately consider economic and environmental effects; and (5) depended on unreliable cost calculations. AGNC also alleged that two commissioners should have been disqualified from participating in the PUC decisions.

¶ 3 PUC and intervenors moved to dismiss under C.R.C.P. 12(b)(1) on the ground that the court lacked subject matter jurisdiction. Section 40–6–115 requires that any suit brought to challenge a PUC order be "commenced and tried" in district court, either in the county the petitioner maintains its principal office or place of business or in Denver District Court. The district court found, and AGNC does not dispute, that its principal office or place of business is not in Routt County but in Garfield County.

¶ 4 Nevertheless, the district court did not dismiss the case. It concluded that the language in section 40–6–115(5) requiring a case to be "commenced and tried" in one of two district courts was a venue provision, not a jurisdictional limitation. As such, the court ordered AGNC to select one of the two fora, and indicated that it would order a transfer. As the court put it,

> Routt County is not Petitioner's primary place of business; Garfield County is. Routt County District Court, therefore, has no authority to review the decision of the Public Utility Commission at issue. Routt County District Court does, however, have general jurisdiction over the class of cases before the court and may change venue to the proper forum. Petitioner will inform the court no later than August 12, 2011 as to whether it elects to have the venue changed to Garfield County District Court or to the District Court for the City and County of Denver.

AGNC selected the Denver District Court.

¶ 5 PUC initiated an original proceeding with this court pursuant to C.A.R. 21, arguing that the case should be dismissed for lack of jurisdiction because it was not "commenced" in a proper forum. We issued a rule to show cause, and we now discharge the rule.

## II.

¶ 6 We hold that section 40–6–115(5) mandates venue and does not limit jurisdiction. On remand, the Routt County District Court may transfer this case to the Denver District Court.

### A. Standard of Review

¶ 7 In response to a C.R.C.P. 12(b)(1) challenge, the plaintiff has the burden of proving subject matter jurisdiction. *Medina v. State*, 35 P.3d 443, 452 (Colo.2001). The constitution grants district courts general subject matter jurisdiction. Colo. Const. art. VI, § 9. The legislature may limit this jurisdiction, but only explicitly. *State v. Borquez*, 751 P.2d 639, 642 (Colo.1988).

¶ 8 Where a statute provides a right of review of an administrative decision, the statute is the exclusive means to secure review. *Id.* at 644. A petitioner's failure to comply strictly with the statutory procedure deprives the district court of jurisdiction. *Id.*

(quoting *Barber v. People,* 127 Colo. 90, 95, 254 P.2d 431, 434 (1953)). If, however, the petitioner meets the jurisdictional requirements for review of an agency decision, the petitioner may cure nonsubstantive deficiencies in its complaint. *Trans Shuttle, Inc. v. PUC,* 58 P.3d 47, 50 (Colo.2002).

¶ 9 Venue requirements limit where an action may be "commenced," "brought," or "tried." *See Spencer v. Sytsma,* 67 P.3d 1, 3 (Colo.2003); *Borquez,* 751 P.2d at 641. A specific statutory provision on venue prevails over a conflicting provision in C.R.C.P. 98, the catch-all venue provision. *See U.M. v. Dist. Court,* 631 P.2d 165, 168 (Colo.1981). Venue requirements are imposed for the convenience of the parties, and are a procedural, not a substantive issue. *Spencer,* 67 P.3d at 3. When a party brings an action in an improper venue, it is not a jurisdictional or fatal defect. *Cf. Fletcher v. Stowell,* 17 Colo. 94, 96, 28 P. 326 (1891). The remedy for improper venue is a transfer to the proper venue. *See Spencer,* 67 P.3d at 7; *People v. Dist. Court,* 78 Colo. 526, 530, 242 P. 997 (1925).

¶ 10 However, not all place-based forum requirements are venue provisions; some are jurisdictional in nature. When a party violates a jurisdictional requirement in petitioning a district court to review an administrative decision, the court has no power to hear the case, or even to order a transfer. Instead, the court must dismiss the case. *See Borquez,* 751 P.2d at 643–45.

¶ 11 Therefore, the pivotal question in this case is whether section 40–6–115(5) contains a jurisdictional or a venue requirement. As with all matters of statutory interpretation, we proceed de novo with the goal of effectuating the intent of the General Assembly. *S. Ute Indian Tribe v. King Consol. Ditch Co.,* 250 P.3d 1226, 1232–33 (Colo. 2011). We apply the plain meaning of the statutory language, give consistent effect to all parts of a statute, and construe each provision in harmony with the overall statutory design. *Id.* If the statutory language is ambiguous, we use other tools of statutory interpretation to determine the General Assembly's intent, including legislative history,

the language of laws on the same or similar subjects, and the placement of a provision within the statutory framework. *Id.* at 1233; *Hernandez v. People,* 176 P.3d 746, 753 (Colo.2008) (legislative history); *id.* at 752–53 ("In resolving the statutory ambiguity, we now look to the statutory setting."); *Town of Erie v. Eason,* 18 P.3d 1271, 1276 (Colo.2001) (laws on same or similar subjects); *People v. Hickman,* 988 P.2d 628, 645 (Colo.1999) (placement of statutory provision within framework); *see* § 2–4–203, C.R.S. (2011).

### B. Section 40–6–115

¶ 12 The two subsections of section 40–6–115 relevant to this case are (1) and (5). They provide:

(1) Within thirty days after a final decision by the commission in any proceeding, any party to the proceeding before the commission may apply to *the district court* for a writ of certiorari or review for the purpose of having the lawfulness of the final decision inquired into and determined....

(5) All actions for review *shall be commenced and tried in the district court in and for the county in which the petitioner resides,* or if a corporation or partnership in the county in which it maintains its principal office or place of business, or in the district court of the city and county of Denver, at the option of the petitioner....

(Emphasis added.)

### 1. Subsection (1): Judicial Review

¶ 13 Subsection (1) is clearly jurisdictional. It provides a strict process and notes the court of jurisdiction. We must determine whether subsection (5), in specifying the counties where an action may be commenced and tried, supplements the jurisdictional requirements of subsection (1) or acts as a freestanding venue requirement.

¶ 14 An initial question is the meaning of "the district court" in subsection (1). This is an unusual formulation. "In district court" is a typical colloquialism, as the district court below pointed out. But "the district court" is also susceptible to a second meaning, "the district court which as defined in subsection (5) may hear the action." As the two possible meanings raise an ambiguity, we look to

legislative history to determine legislative intent. The forerunner of the current statute, an act of 1913, originally provided that, to challenge a PUC decision, "the applicant may apply to *the supreme court* of this State for a writ of review." Ch. 127, sec. 52, 1913 Colo. Sess. Laws 497 (emphasis added). An amendment of 1945 simply replaced "the supreme court" with "the district court." Ch. 195, sec. 8, 1945 Colo. Sess. Laws 531. This indicates that "the district court" in the current statute is so phrased as to contrast with other types of courts. It does not suggest a cross-reference to the "commenced and tried" language, also added in 1945 (tacked onto the end of the section), which has become subsection (5). *Id.* at 532.

### 2. Subsection (5): "Shall Be Commenced"

¶ 15 Unless context dictates otherwise, "shall" denotes a mandate. *Pearson v. Dist. Court,* 924 P.2d 512, 516 (Colo.1996). As such, section 40–6–115(5) mandates that all actions for judicial review of PUC orders be commenced in one of two district courts. Whether this is a mandatory venue or a jurisdictional requirement is ambiguous from the mandatory meaning of "shall," since both are types of mandate.

¶ 16 The meaning of "commence" is clear enough: it means to initiate a suit. It is synonymous with "bring an action," which means "[t]o sue; institute legal proceedings." *Black's Law Dictionary* 219 (9th ed. 2009). Where an action is commenced is the same place as where it is "brought." *See People ex rel. Lackey v. District Court,* 30 Colo. 123, 128, 69 P. 597 (1902) (equating "shall be brought" with "shall be commenced").

¶ 17 Of course, this is different from where an action is "tried." *See id.* at 127, 69 P. 597 (distinguishing "the place for the commencement of actions" from "the place of trial"). Venue is traditionally defined as "place of trial," *see Fletcher,* 17 Colo. at 96, 28 P. 326, but we have recognized more recently that venue may also "relate[ ] to the locality where an action may be properly brought." *Borquez,* 751 P.2d at 641; *see also Black's Law Dictionary* 1695 (9th ed. 2009) (defining venue more vaguely as "[t]he prop-

er or a possible place for a lawsuit to *proceed,*" which may encompass the place of commencement or trial (emphasis added)).

¶ 18 Accordingly, we cannot determine from the words of the statute alone whether "shall be commenced" limits jurisdiction or mandates venue. We look to external aids to determine legislative intent. The most availing constructive aid in this instance is our reference to similar statutes. The General Assembly has passed a number of venue statutes, and their language is instructive.

¶ 19 Section 22–33–108, C.R.S. (2011), for example, provides for jurisdiction over juvenile school attendance matters in its subsection (1): "Those courts having jurisdiction over juvenile matters in a judicial district shall have original jurisdiction over all matters arising out of the provisions of this article." Subsection (1.5) provides further: "All proceedings brought under this article *shall be commenced* in the judicial district in which the child resides or is present." § 22–33–108(1.5)(a) (emphasis added). The latter requirement is not jurisdictional in nature but venue-driven, as noted in the transfer provisions of paragraphs (1.5)(b) and (c): "When a court transfers venue pursuant to ... this subsection (1.5) ...." § 22–33–108(1.5)(c).

¶ 20 Section 19–5–204, C.R.S. (2011), provides that "[a] petition for adoption *shall be filed* in the county of residence of the petitioner or in the county in which the placement agency is located." (Emphasis added.) The legislature titled this section "Venue." Ch. 138, sec. 1, § 19–5–204, 1987 Colo. Sess. Laws 806. Although where headings are added by the revisor of statutes no implication or presumption of a legislative construction is to be drawn therefrom, we properly can use a legislatively selected heading as an aid in construing a statute. *U.M. v. Dist. Court,* 631 P.2d at 167.

¶ 21 Section 19–3–201, C.R.S. (2011), provides, "All proceedings brought under this article *shall be commenced* in the county in which the child resides or is present." (Emphasis added.) Section 19–6–102, C.R.S. (2011), provides, "A petition filed under this section *shall be brought* in the county in

which the child resides or is physically present, or in any county where the obligor parent resides, or in any county where public assistance is or was being paid on behalf of the child." (Emphasis added.) The legislature called both of these sections "Venue." Ch. 138, sec. 1, §§ 19–3–201, –6–102, 1987 Colo. Sess. Laws 760, 811.

¶ 22 Section 16–13–307, C.R.S. (2011), regarding suits over public nuisance, provides a jurisdictional subsection (1): "The several district courts of this state shall have original jurisdiction of proceedings under this part 3." Subsection (2) provides, "An action to abate a public nuisance *shall be brought* in the county in which the subject matter of the action, or some part thereof, is located or found or in the county where the public nuisance act, or any portion thereof, was committed." (Emphasis added.) The legislature affixed the heading "Jurisdiction-venue-parties-process." Ch. 122, sec. 5, § 16–13–307, 1987 Colo. Sess. Laws 633. As subsection (1) is clearly the jurisdiction piece, it follows that subsection (2) provides for venue, and not jurisdiction. *Cf. U.M. v. Dist. Court*, 631 P.2d at 167 (reasoning, in a similar situation, that "Section 19–6–109 consists of three subsections; the first two explicitly treat jurisdiction. It follows that the 'venue' portion of the statutory heading was intended to apply to subsection (3).").

¶ 23 These are just a few of the statutes throughout the code limiting venue, and not jurisdiction, by specifying the county or counties where an action "shall be commenced," or using substantively identical language. It follows that, in place-based forum provisions, the legislature uses "shall be commenced" to erect venue requirements.

¶ 24 On the other hand, *Borquez,* the case on which the PUC relies, involved a statute for judicial review of administrative driver license revocations which provided, "Within thirty days of the issuance of the final determination of the department under this section, a person aggrieved by the determination shall have the right to file a petition for judicial review in the district court in the county of the person's residence." 751 P.2d at 641 (quoting § 42–2–122.1(9)(a), C.R.S. (1984 Repl.)). Taking into account the language of other related statutes, we explained that as a matter of construction this section was controlling as to forum for driver license revocations. *Id.* at 644. No part of the section, section 42–2–122.1, included any other forum provisions. We held that, "[e]xamined in the context of the other sections of title 42, the language of this provision is persuasive that the legislature intended not simply to specify proper venue, but rather to prescribe that review of administrative license revocations under section 42–2–122.1 may be obtained only in the district court of the driver's residence." *Id.* at 643. We also interpreted the statutory language that a person "shall have the right to file a petition" to characterize section 42–2–122.1(9)(a) as a "statutorily provided right of review." *Id.* at 644. Because it was the sole provision setting out the "right to file," a failure to comply with the *Borquez* statute constituted a "failure to exercise a statutorily provided right of review … a jurisdictional defect, mandating dismissal." *Id.* at 644.

¶ 25 In this case, unlike in *Borquez,* the statute at issue includes a separate subsection which clearly prescribes jurisdiction. *See* § 40–6–115(1). In contrast to stand-alone language setting out a "right to file," section 40–6–115(5) prescribes only where an "action[ ] for review," whose parameters are set out in subsections above, shall proceed. For these reasons, we do not reach the conclusion that a failure to comply with section 40–6–115(5) constitutes a "failure to exercise a statutorily provided right of review." *Borquez,* 751 P.2d at 644. In *Borquez* we also used the language of related statutes to conclude that the provision was jurisdictional. *Id.* at 643. Here, the language of other statutes points to venue instead. Thus, we distinguish *Borquez* from the case before us.

¶ 26 A failure to comply with section 40–6–115(5), coupled with compliance with section 40–6–115(1), constitutes only a failure to file in the correct venue, a procedural, and not a substantive or jurisdictional, defect. *Spencer,* 67 P.3d at 3; *Fletcher,* 17 Colo. at 96, 28 P. 326. Therefore transfer, and not dismissal, is the proper remedy. *See Spencer,* 67 P.3d at 7; *People v. Dist. Court,* 78 Colo. at

530, 242 P. 997; *cf. Trans Shuttle*, 58 P.3d at 50.

### C. Application to this Case

¶ 27 AGNC filed a petition for certiorari or judicial review in compliance with section 40–6–115(1) but not in compliance with section 40–6–115(5). It invoked jurisdiction properly but commenced suit in an improper venue. As the district court found, the proper remedy is transfer, not dismissal.

¶ 28 This case demonstrates why the General Assembly intended to allow a venue transfer rather than require dismissal. The district court found that, "from [AGNC's] perspective, Routt County was a proper county in which to file the Petition." Although AGNC does not argue that the case should stay in Routt County, the facts illuminate why it was mistaken in its initial venue selection. The organization attempted to amend its bylaws in January 2011 to specify that its principal office is located in the county of the residence of the Chair, Routt County at the time. AGNC's Board voted on this amendment by email, with six of the seven Board members (a majority, as necessary) voting for the amendment, but the district court found flaws in the voting procedure.[1]

¶ 29 We assume without deciding that such flaws in the voting process may have been substantial enough to void the amendment regarding AGNC's change of principal office, and that, as the district court found, the "nerve center" of the organization remained in Garfield County despite the attempted bylaw change.

¶ 30 Nevertheless, a primary purpose of courts is to provide a forum for litigating disputes. *Trans Shuttle*, 58 P.3d at 50. Subject matter jurisdiction is defined only as a court's power to resolve a dispute in which it renders judgment. *Id.* at 49–50. In *Trans Shuttle* we accepted a petition un-

der section 40–6–115 despite its "technical deficiencies." *Id.* at 50. Although in *Trans Shuttle* the "poorly framed complaint caused unnecessary delay and added expense to the parties and the courts," we concluded that the PUC was not prejudiced and there was no jurisdictional defect. *Id.* The petition substantively complied with the requirements of section 40–6–115 in that it (1) was filed by a party to a PUC proceeding, (2) was filed within 30 days of a final PUC decision, (3) informed the relevant parties of the basis of its request for review, and (4) requested certification of the PUC record to the district court. *Id.* at 49. We held that, where an action to review a PUC final decision substantially complies with public utility law and the defective pleading causes no prejudice, that action does not violate section 40–6–115. *Id.*

¶ 31 Here, there is no question that the petition for judicial review was timely filed and that AGNC met the other substantive requirements set forth according to the four factors identified in *Trans Shuttle*. We do not construe the General Assembly's intent in enacting section 40–6–115 as prohibiting a venue transfer to the Denver District Court, as here. The district court correctly determined that venue was proper in the district court of either Garfield County or the City and County of Denver. AGNC has elected to proceed in Denver. The court may order a transfer to the District Court for the City and County of Denver.

### III.

¶ 32 Accordingly, we discharge the rule and return the case to the Routt County District Court for further proceedings consistent with this opinion.

Justice RICE dissents, and Chief Justice BENDER joins in the dissent.

Justice MÁRQUEZ does not participate.

---

1. AGNC's bylaws required thirty days' notice of amendment language before a vote could take place. While the Chair requested on January 17, 2011, that votes be in "no later than 4:00 p.m. on January 20, 2011," the court found from the record that "the vote was complete on January 18, 2011," two days earlier than the required thirty days.

The district court also had concerns about the Open Meetings Law (OML), since it held AGNC to be an intergovernmental relationship under part 2 of article 1 of title 29, C.R.S. (2011). The court was "unclear as to how an electronic vote from each Board member to the administrative assistant of [AGNC] over a several-day period could be accessed by the public as the votes were cast, as required by OML."

Justice RICE, dissenting.

¶ 33 These cases present the question of whether a petitioner's failure to commence its action to review a PUC decision in a proper division of the district court, as required by subsection 40–6–115(5), C.R.S. (2011), mandates dismissal of the action for want of subject matter jurisdiction. I would answer this question in the affirmative and hold accordingly that the Routt County district court should have dismissed this case. Therefore, I respectfully dissent.

¶ 34 Section 40–6–115, read as a whole and in harmony with the legislature's intent to create an efficient vehicle for judicial review of PUC decisions, explicitly limits the district court's jurisdiction over PUC actions to cases in which the petitioner strictly complies with the section's requirements. One such requirement, contained in subsection 40–6–115(5), states that all actions for review of a PUC decision "shall be commenced" in one of two district courts: (1) the Denver district court, or (2) the district court of the county in which the petitioner resides; or, in the case of a business, where the business has its principal office or place of business. In my view, AGNC's failure to strictly comply with subsection 40–6–115(5), by filing its petition in Routt county instead of in Denver or Garfield county, created a jurisdictional defect that should have led to dismissal of the case.

## I. Standard of Review

¶ 35 We review the district court's construction of a statute de novo. *See Klinger v. Adams Cnty. Sch. Dist. No. 50*, 130 P.3d 1027, 1031 (Colo.2006). Our analysis begins with the plain language of the statute. *Wolf Ranch, LLC v. City of Colo. Springs*, 220 P.3d 559, 563 (Colo.2009) (citing *People v. Valenzuela*, 216 P.3d 588, 590 (Colo.2009)). When this language is unambiguous, we give effect to the plain and ordinary meaning of the provision without resorting to other rules of statutory construction. *Stamp v. Vail Corp.*, 172 P.3d 437, 442–43 (Colo.2007). In reviewing the plain language of a provision, we will read and consider the statute as a whole. *People v. Dist. Court*, 713 P.2d 918, 921 (Colo.1986). We will also "give effect to

each word and construe each provision in harmony with the overall statutory design." *Well Augmentation Subdist. v. Aurora*, 221 P.3d 399, 410 (Colo.2009).

## II. Jurisdiction and Venue

¶ 36 The outcome of this case turns on whether subsection 40–6–115(5) is jurisdictional, or whether it simply describes venue. If subsection 40–6–115(5) only pertains to venue, the reviewing court may "cure" a petitioner's failure to comply with the provision by transferring the case to the proper division of the district court because filing in an improper venue is a non-substantive error. *See* Maj. op. at ¶ 8 (citing *Trans Shuttle, Inc. v. PUC*, 58 P.3d 47, 50 (Colo.2002)). For example, in *Trans Shuttle*, we permitted a petitioner to cure its non-substantive error in titling its request for the district court's review of a PUC decision as a complaint under C.R.C.P. 106, rather than as a writ of certiorari under section 40–6–115, instead of requiring the district court to dismiss the petition for want of jurisdiction. 58 P.3d at 48, 50. In reaching that result, we determined that the petition "substantively complied with the requirements of section 40–6–115," *id.* at 49, and therefore held that the petition "met the jurisdictional requirements for review of a PUC decision," *id.* at 50. Accordingly, if we determine here that subsection 40–6–115(5) is a non-substantive venue provision, then we must allow the petitioner to cure its error by having the case transferred to the proper division of the district court.

¶ 37 If subsection 40–6–115(5) is jurisdictional, however, then the petitioner's failure to strictly comply with its requirements will result in dismissal of the action. *Barber v. People*, 127 Colo. 90, 95, 254 P.2d 431, 434 (1953); *see Mile High United Way, Inc. v. Bd. of Assessment Appeals*, 801 P.2d 3, 5 (Colo.App.1990). I begin by describing the basic rules of jurisdiction.

¶ 38 "Jurisdiction is the authority of a court to hear and decide a case presented to it." *Sanctuary House, Inc. v. Krause*, 177 P.3d 1256, 1258 (Colo.2008) (citing *Hill v. Dist. Court*, 134 Colo. 369, 373–74, 304 P.2d 888, 891 (1957)). A court has jurisdiction if

"the case is one of the type of cases that the court has been empowered to entertain by the sovereign from which the court derives its authority." *Paine, Webber, Jackson & Curtis, Inc. v. Adams,* 718 P.2d 508, 513 (Colo.1986). The Colorado Constitution bestows appellate jurisdiction upon the district court "as may be prescribed by law." Colo. Const. art. VI, § 9(1). We have interpreted this constitutional provision to confer " 'unrestricted and sweeping jurisdictional powers' " upon the district court in the absence of explicit limiting legislation. *Dep't of Revenue, Motor Vehicle Div. v. Borquez,* 751 P.2d 639, 642 (Colo.1988) (quoting *In re A.W.,* 637 P.2d 366, 373 (Colo.1981)).

¶ 39 Where, as here, the legislature provides the district court with a statutory right of judicial review, a party must strictly comply with the statute's terms to invoke the reviewing court's jurisdiction. *Mile High United Way,* 801 P.2d at 5 (citing *Barber,* 127 Colo. at 95, 254 P.2d at 434). A petitioner's failure to strictly comply with an explicit, plain, and mandatory statutory review requirement results in a lack of jurisdiction and requires the district court to dismiss the action. *Barber,* 127 Colo. at 95, 254 P.2d at 434.

¶ 40 Once a court establishes that it has jurisdiction over an action, the answer to the question of venue determines which particular Colorado court should try the case. *Krause,* 177 P.3d at 1258. The right to have venue changed because an action is brought in an improper county is not jurisdictional. *Slinkard v. Jordan,* 131 Colo. 144, 149, 279 P.2d 1054, 1056 (1955). Matters of jurisdiction, however, *may* divest a court of its authority to transfer a case to the proper venue. *See Krause,* 177 P.3d at 1259 ("Venue is subservient to jurisdiction."). As such, a court may only transfer a case filed in an improper venue if that court has jurisdiction over the matter. *See id.* With this legal framework in mind, I turn to section 40–6–115.

## III.  Section 40–6–115

¶ 41 Section 40–6–115 as a whole "provides the exclusive procedure for invoking the *jurisdiction* of the district court to review a PUC decision." *Silver Eagle Servs., Inc. v. PUC,* 768 P.2d 208, 209 (Colo.1989) (emphasis added). The General Assembly enacted this section to explicitly limit district court jurisdiction over PUC matters within the legislative framework of encouraging the speedy and efficient judicial review of PUC decisions. *See* § 40–6–117, C.R.S. (2011) (priority of PUC review actions in district court).

¶ 42 After describing the plain language of section 40–6–115 to highlight the jurisdictional nature of the entire provision, I specifically analyze subsection 40–6–115(5), apply it to this case, and conclude that the Routt County district court should have dismissed this action because AGNC failed to strictly comply with all jurisdictional requirements of section 40–6–115.

### A.  Section 40–6–115 is Jurisdictional

¶ 43 Each subsection of section 40–6–115 explicitly limits the district court's jurisdiction to review PUC decisions. First, subsection 40–6–115(1) describes the form and timing of petitions for certiorari to review a PUC action, and limits the evidence that the district court may review. This subsection is clearly jurisdictional because it delineates some of the initial procedures that petitioners must follow to invoke the district court's statutory authority to review a PUC decision.

¶ 44 Subsection 40–6–115(2) further limits the district court's jurisdiction to review PUC decisions. According to this provision, the district court may only review the PUC's findings and conclusions on disputed questions of fact that are challenged on constitutional grounds. § 40–6–115(2). We have construed this subsection to additionally authorize the district court to decide questions of law relevant to its review, and "to interpret pertinent constitutional and statutory provisions." *Silver Eagle,* 768 P.2d at 212.

¶ 45 Subsection 40–6–115(3) limits the scope of the district court's jurisdiction in PUC cases by stating that the district court's review "*shall not extend* further than to determine whether the [PUC] has regularly pursued its authority." (emphasis added); *see Silver Eagle,* 768 P.2d at 212. Subsection 40–6–115(4) similarly narrows the district

court's power to review PUC actions by explicitly providing that "no court of this state, except the district court *to the extent specified*, shall have *jurisdiction* to review, reverse, correct, or annul any order or decision of the [PUC]." (emphasis added). Finally, subsection 40–6–115(5) provides the last explicit limitation on the district court's jurisdiction to review a PUC action by expressly delineating the divisions of the district court in which an action "shall be commenced" in order to properly invoke the district court's power to review the case.

¶ 46 As this summary of section 40–6–115 reveals, subsection 40–6–115(1) is *not* the only subsection of section 40–6–115 that describes the scope of a reviewing court's jurisdiction to review PUC decisions. Rather, section 40–6–115 as a whole premises the district court's jurisdiction on the petitioner's strict compliance with *all* of the statute's requirements, consistent with the legislature's intent to limit district court jurisdiction over PUC matters. *See Mile High United Way*, 801 P.2d at 5; *see also Borquez*, 751 P.2d at 644 (compliance with jurisdictional forum provision required to avoid dismissal). I now analyze the plain language of subsection 40–6–115(5) to determine the parameters of its jurisdictional forum requirement.

### B. Subsection 40–6–115(5)

¶ 47 To successfully invoke the statutory jurisdiction of a district court to review a PUC decision, subsection 40–6–115(5) plainly and unambiguously requires a petitioner to initiate its appeal in either one of two specific divisions of the district court. The subsection provides in the relevant part:

> All actions for review *shall be commenced and tried* in the district court in and for the county in which the petitioner resides, or if a corporation or partnership in the county in which it maintains its principal office or place of business, or in the district court of the city and county of Denver, at the option of the petitioner.

§ 40–6–115(5) (emphasis added).

¶ 48 The word "shall" is mandatory. *See People v. Dist. Court*, 713 P.2d at 921. When

read within the jurisdictional whole of section 40–6–115, "shall" in subsection 40–6–115(5) denotes a requirement with which a petitioner must strictly comply to invoke the jurisdiction of a reviewing court. *See id; Mile High United Way*, 801 P.2d at 5. The word "commence" means "to initiate formally by performing the first act of." *Webster's Third New Int'l Dictionary* 456 (Philip Babcock Gove, ed., 2002). "Commence" is synonymous with "bring an action," which means to "institute legal proceedings." *Black's Law Dictionary* 219 (9th ed. 2009). Thus, the phrase "shall be commenced" plainly means that a petitioner *must initiate* its appeal of a PUC decision in the proper division of the district court, as described in subsection 40–6–115(5), to successfully invoke the reviewing court's jurisdiction. *See Mile High United Way*, 801 P.2d at 5. A petitioner's failure to comply with this requirement constitutes a jurisdictional defect mandating dismissal of the case. *Borquez*, 751 P.2d at 644.

¶ 49 In addition, the phrase "and tried" that immediately follows "shall be commenced" in subsection 40–6–115(5) indicates that the legislature intended "shall be commenced" to refer to something other than venue. Venue relates to where a case "shall be tried."[2] *See, e.g.,* C.R.C.P. 98. As such, the phrase "and tried" in subsection 40–6–115(5) refers to venue, and shows that the legislature intended venue to lie in the same district court in which an action is properly commenced. Had the legislature intended "shall be commenced" to refer to venue, it would not have included "and tried" immediately after that phrase because doing so would have been redundant. Therefore, "shall be commenced" speaks to the jurisdictional requirement that a petitioner must initiate its action in the proper forum; it does not describe venue.

¶ 50 Construing subsection 40–6–115(5) in isolation and as a non-jurisdictional venue provision, as the majority does, permits petitioners to file section 40–6–115 actions in any district court in Colorado, and completely

---

**2.** The majority relies on several venue-related cases and statutes to conclude that subsection 40–6–115(5) refers only to venue. It does so, however, after finding that subsection 40–6–

115(5) is ambiguous. As I perceive no ambiguity in this subsection, I do not address the external interpretive aids relied upon by the majority.

ignores the legislature's intent to limit district court jurisdiction over PUC matters. The majority's interpretation directly contravenes the plain language of subsection 40–6–115(5), which explicitly limits district court jurisdiction over a petition to review a PUC decision by requiring petitioners to "commence and try" such an action in one of two specific divisions of the district court.

¶ 51 An action can only be commenced once. The result of the majority's interpretation of "commence" defies logic and frustrates the legislature's intent to limit district court jurisdiction because the interpretation allows an action to be commenced in *any* district court, and then commenced *again* in one of the district courts described in subsection 40–6–115(5). Nothing in the plain language of section 40–6–115 expressly or impliedly permits a district court to transfer a previously-commenced action to another division of the district court for trial. Thus, the majority appears to inexplicably interpret "commence" to mean more than it does: to initiate formally by performing the first act of a legal proceeding.

¶ 52 We must construe the unambiguous plain language of subsection 40–6–115(5) to require a petitioner to initiate a PUC review action in one of two specific forums to invoke the jurisdiction of the district court. Failure to strictly comply with the terms of subsection 40–6–115(5) effectively closes the courtroom door on the petition, consistent with the legislature's intent to explicitly limit district court jurisdiction to review PUC decisions. *See Mile High United Way*, 801 P.2d at 5.

### IV. Application and Conclusion

¶ 53 AGNC undisputedly failed to substantively comply with subsection 40–6–115(5) by commencing its action for review of a PUC decision in Routt County district court, rather than in the district court for Garfield or Denver county. The Routt County district court, like the majority, interpreted subsection 40–6–115(1) to confer jurisdiction to review PUC decisions upon all Colorado district courts generally, and interpreted subsection 40–6–115(5) as describing venue with no impact on jurisdiction. Based on this interpretation, the Routt County district court took jurisdiction over AGNC's case and transferred it to

Denver district court, at AGNC's request, in an effort to comply with subsection 40–6–115(5).

¶ 54 The plain language of section 40–6–115, read as a whole to define the limits of a district court's jurisdiction to review PUC decisions, indicates that the Routt County district court erred by taking jurisdiction over this case. Unlike the petitioner in *Trans Shuttle*, AGNC failed to substantively comply with the requirements of section 40–6–115. *See* 58 P.3d at 50. As such, the Routt County district court should have dismissed AGNC's action for lack of jurisdiction pursuant to C.R.C.P. 12(b)(1), as the PUC requested, because AGNC failed to strictly comply with the jurisdictional forum requirement of subsection 40–6–115(5). *See Borquez*, 751 P.2d at 644; *see also Mile High United Way*, 801 P.2d at 5. Because the majority affirmed the Routt County district court's inappropriate assumption of jurisdiction, and thereby failed to order that court to dismiss AGNC's petition, I respectfully dissent.

¶ 55 I am authorized to state that Chief Justice BENDER joins in this dissent.