2012 CO 69

**In the Matter of Michael T. MIRANDA.**

**No. 12SA112.**

Supreme Court of Colorado,
En Banc.

Nov. 27, 2012.

Office of Attorney Regulation Counsel, Charles E. Mortimer, Jr., Deputy Regulation Counsel, April M. McMurrey, Assistant Regulation Counsel, Denver, Colorado, Attorneys for Respondent–Appellant.

Michael T. Miranda, Denver, Colorado, pro se.

Justice HOBBS delivered the Opinion of the Court.

¶ 1 In this appeal, Attorney Regulation Counsel challenges the Hearing Board's order[1] reinstating Michael T. Miranda to the practice of law.[2] Miranda is currently serving the mandatory parole portion of his felony criminal sentence. The Hearing Board nevertheless determined that he is fit to practice law and reinstated him to practice. We disagree. Pursuant to section 18–1.3–401(3), C.R.S. (2012), and C.R.C.P. 251.29, we hold that Miranda cannot be reinstated to practice law until he has completed his felony sentence. Accordingly, we reverse the Hearing Board's order.

## I.

¶ 2 On the evening of September 4, 2004, Miranda turned his vehicle left into a parking lot out of a northbound lane of South Colorado Boulevard, colliding with a southbound motorcyclist, who died two days later from his injuries. Blood tests carried out subsequent to Miranda's arrest revealed his blood alcohol content at the time of the accident was approximately twice the legal limit.

¶ 3 Miranda entered a guilty plea to vehicular homicide/DUI, a class three felony under section 18–3–106(1)(b)(I), C.R.S. (2012), on September 29, 2005. On December 2, 2005, the trial court sentenced Miranda to the Department of Corrections for eight years followed by five years of mandatory parole. We placed Miranda under immediate suspension from the practice of law on April 14, 2006, pursuant to C.R.C.P. 251.8.[3] On July 10, 2007, the Hearing Board imposed a two-year suspension (effective August 10, 2007), concluding that public censure was "an insufficient sanction for a lawyer who cause[d] the death of another while operating a vehicle after knowingly consuming alcohol to excess." *People v. Miranda,* 168 P.3d 11, 13 (Colo.O.P.D.J.2007).

¶ 4 On September 17, 2010, Miranda filed a petition for reinstatement of his license to practice law pursuant to C.R.C.P. 251.29. At that time, he was still incarcerated.[4] On October 5, 2010, Attorney Regulation Counsel filed a motion to dismiss the petition on the basis that section 18–1.3–401(3) barred reinstatement while Miranda remained in the custody of the Department of Corrections. The Presiding Disciplinary Judge (PDJ) denied this motion and initially scheduled a reinstatement hearing for November 1–2, 2011. On November 30, 2011, the parole board allowed Miranda to begin serving his

---

1. *Miranda v. People,* 276 P.3d 122, 131 (Colo. O.P.D.J.2012) (reinstating Miranda, subject to seven conditions).

2. Attorney Regulation Counsel phrased the issues as:

 A. Whether an Attorney Serving a Mandatory Felony Parole Sentence is Fit to Be Licensed as an Officer of the Court?
 B. Whether an Attorney Serving a Mandatory Felony Parole Sentence Can Prove Rehabilitation?
 C. Whether the PDJ [Presiding Disciplinary Judge] Erred by Granting Miranda's Motion in Limine Prohibiting the People from Discussing the Statutory Prohibition on Miranda's Practice of Law Pursuant to C.R.S. § 18–1.3–401(3) Before the Hearing Board?

3. C.R.C.P. 251.8(a) defines "immediate suspension" as "temporary suspension by the Supreme Court of an attorney's license to practice law … while [disciplinary] proceedings … are pending … when there is reasonable cause to believe … the attorney is causing or has caused immediate and substantial public or private harm," and the attorney, for example, "has been convicted of a serious crime."

4. When Miranda filed the petition, he resided in community corrections, rather than the Department of Corrections itself. A community corrections program is "a community-based or community-oriented program that provides supervision of offenders" in conjunction with programs and services that, for example, "aid offenders in obtaining and holding regular employment." § 17–27–102(3), C.R.S. (2012).

mandatory parole, which is slated to end November 20, 2016.

¶ 5 On February 1, 2012, the PDJ granted Miranda's motion in limine forbidding Attorney Regulation Counsel from invoking section 18–1.3–401(3) at the upcoming hearing as a basis for not reinstating Miranda. On February 6–7, 2012, the Hearing Board heard Miranda's petition for reinstatement. The Board issued its decision April, 17, 2012, reinstating Miranda. It concluded that Miranda had proven by clear and convincing evidence his rehabilitation, fitness to practice law, and compliance with disciplinary orders. The Board determined that Miranda had confronted his alcohol abuse problem, had taken responsibility for his mistakes, and was unlikely to drink and drive again. It highlighted Miranda's work as a paralegal and his participation in continuing legal education as demonstrating professional competence and concluded that he was fit to practice law. In doing so, the Hearing Board observed that Miranda's parole conditions would "create some practical impediments to running an efficient legal practice." *Miranda v. People*, 276 P.3d 122, 129 (Colo.O.P.D.J.2012). For example,

> the prohibition against driving and the requirement that Petitioner seek permission to travel outside the Denver metropolitan area will force him to limit his case load and carefully plan his schedule. Even more significant, the proscription against associating with those who have been charged with criminal conduct may raise client conflict issues that cannot be waived.

*Id.* at 130. Nonetheless, the Hearing Board concluded that, "rather than rejecting outright Petitioner's bid for reinstatement[,] ... the better practice is to [put in] place conditions ... designed to protect the public." *Id.* Accordingly, the Board conditioned Miranda's reinstatement on his compliance with the following seven requirements:

A.) Petitioner shall successfully complete all conditions of his parole. Petitioner has the duty to notify the Office of Attorney Regulation Counsel within forty-eight hours if he violates any condition of his parole ....

B.) Petitioner shall abstain from using alcohol or any other [non-prescription] mood-altering substance ... until his parole sentence is discharged. Petitioner has the duty to notify the Office of Attorney Regulation Counsel within forty-eight hours of any [such] use ....

C.) Until Petitioner's parole sentence is discharged, he shall fully disclose in writing and discuss with all prospective clients his status as parolee and shall, upon the formation of any attorney-client relationships, obtain written informed consent from such clients confirming that he disclosed his status as parolee. Petitioner shall provide written confirmation of compliance with this condition on a quarterly basis ....

D.) ... Petitioner shall attend monthly counseling with a psychiatrist or a psychologist ("doctor") who is pre-approved by the Office of Attorney Regulation Counsel ... until Petitioner's parole sentence is discharged, unless the doctor reports in writing ... that such counseling is no longer required or can be modified or reduced. Petitioner shall execute an authorization for release, requiring the doctor to notify the Office of Attorney Regulation Counsel if Petitioner fails to participate in this required counseling, or if the doctor reasonably believes that Petitioner has failed to abstain from the use of alcohol or any other [non-prescription] mood-altering substance ....

E.) Petitioner shall attend AA meetings at least once a month until his parole sentence is discharged. Petitioner shall provide written confirmation of compliance ... on a quarterly basis ....

F.) Petitioner shall consult monthly with a peer mentor selected by the Office of Attorney Regulation Counsel in conjunction with Petitioner ... until Petitioner's parole sentence is discharged, unless the peer mentor and the Office of Attorney Regulation Counsel jointly determine that such mentoring is no

longer required or can be modified or reduced. Petitioner shall execute an authorization for release, requiring the mentor to notify the Office of Attorney Regulation Counsel if Petitioner fails to participate in this required mentoring, or if the mentor reasonably believes that Petitioner has failed to abstain from the use of alcohol or any other [non-prescription] mood-altering substance.... Petitioner shall provide written confirmation of compliance with this condition on a quarterly basis....

G.) Petitioner shall engage in fifty hours of community education and outreach by December 31, 2013, through public speaking or other volunteer opportunities to increase community awareness about the harms associated with excessive alcohol consumption and drunk driving. Such engagements must be pre-approved by the Office of Attorney Regulation Counsel.

*Id.* at 131–32.

¶ 6 By nature, condition "A" is a compound condition, comprised of the nine standard and nine "additional" conditions set forth in Miranda's parole order/agreement, as well as the twenty-plus directives dictated by his parole officer. These include confinement to the Denver metropolitan area and a requirement that Miranda submit the name and date of birth of any person he would like to associate with (including by phone, mail, or email correspondence) to his parole officer in order to fulfill the mandate that he request and receive permission prior to associating with anyone with a criminal history (encompassing felonies, misdemeanors, and municipal code violations).

¶ 7 Attorney Regulation Counsel appealed Miranda's reinstatement.

## II.

¶ 8 Pursuant to section 18–1.3–401(3) and C.R.C.P. 251.29, we hold that Miranda cannot be reinstated to practice law until he has completed his felony sentence. Accordingly, we reverse the Hearing Board's order.

## A. Standard of Review

 ¶ 9 As with any appeal, we review questions of law de novo. *See* C.R.C.P. 251.27(b); *In re Haines,* 177 P.3d 1239, 1245 (Colo.2008). Whether or not an applicant for reinstatement's parolee status precludes reinstatement to the Colorado Bar is a question of law. In construing a statute, we ascertain and effectuate the General Assembly's intent. *See Associated Gov'ts of Nw. Colo. v. Colo. Pub. Utils. Comm'n,* 2012 CO 28, ¶ 11, 275 P.3d 646, 649. We apply the plain meaning of the statutory language, give consistent effect to all parts of a statute, and construe each provision in harmony with the overall statutory design. *Id.* at ¶ 11, 275 P.3d at 649. If the statutory language is ambiguous, we employ additional tools of statutory construction. *Id.* at ¶ 11, 275 P.3d at 649. We avoid interpretations that would produce absurd results. *S. Ute Indian Tribe v. King Consol. Ditch Co.,* 250 P.3d 1226, 1233 (Colo. 2011).

## B. Statutory Disqualification from Practicing Law, Section 18–1.3–401(3)

¶ 10 Section 18–1.3–401(3) of the Colorado Criminal Code provides:

> *Every person convicted of a felony,* whether defined as such within or outside this code, *shall be disqualified from holding any office of honor, trust, or profit under the laws of this state or from practicing as an attorney in any of the courts of this state* during the actual time of confinement or commitment to imprisonment or release from actual confinement on conditions of probation. *Upon his or her discharge after completion of service of his or her sentence or after service under probation, the right to hold any office of honor, trust, or profit shall be restored,* except as provided in section 4 of article XII of the state constitution.

(Emphasis added). The first sentence of the provision establishes the time frame during which a convicted felon may not hold an office of honor, trust, or profit or practice law. The second sentence of the provision restates this rule by marking the event that allows a convicted felon to regain lost rights.

We construe the statute as a whole to provide that a person must complete his or her felony sentence before becoming eligible for reinstatement to practice law.

■ ¶ 11 A mandatory period of parole constitutes part of a felon's sentence. We have held that a felony offender's penalty or sentence consists of both an incarceration component and a mandatory parole component.[5] Therefore, "discharge after completion of service of ... [one's] sentence" reasonably contemplates discharge only after a person has served his or her entire sentence, including parole.

¶ 12 A parolee remains in the Department of Corrections' legal custody. § 17–2–207(3), C.R.S. (2012); *People v. Lucero,* 772 P.2d 58, 60 (Colo.1989). Parole serves not as a discharge from imprisonment but, simply, as a conditional "permit to go outside a correctional facility." § 17–22.5–203(2), C.R.S. (2012); *see Lucero,* 772 P.2d at 60 (explaining that a parolee has been conditionally released from actual custody but remains in legal custody and is constructively a prisoner of the state).

■ ¶ 13 Conditional release on parole operates as an extension of a person's confinement intended to facilitate reintegration with society, as opposed to an unconditional release accompanied by full restoration of the person's civil rights. *Danielson v. Dennis,* 139 P.3d 688, 692–93 (Colo.2006). An officer of the Department of Corrections monitors each parolee, who must report periodically to that officer. *People v. Campbell,* 742 P.2d 302, 309 (Colo.1987). Parolees may not regis-

ter to vote or vote. Colo. Const. art. VII, § 10; § 1–2–103(4), C.R.S. (2012); *Danielson,* 139 P.3d at 694. They "have fewer expectations of privacy than probationers," *Samson v. California,* 547 U.S. 843, 850, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006), such that parole officers may search parolees' persons, residences, or vehicles unannounced, without a warrant, and without reasonable suspicion. *See* § 17–2–201(5)(f)(I)(D), C.R.S. (2012); *Samson,* 547 U.S. at 852–57, 126 S.Ct. 2193; *People v. Brown,* 250 P.3d 718, 720 (Colo. App.2010), *cert. denied,* No. 10SC393, 2011 WL 85821, at *1 (Colo. Jan. 10, 2011). In sum, a parolee's freedom, although greater than when in the Department of Corrections' physical custody, remains limited. *Campbell,* 742 P.2d at 309.[6]

¶ 14 Miranda argues that the General Assembly did not intend to bar a parolee from practicing law because section 18–1.3–401(3), as it presently reads, does not explicitly mention the period of parole as a time during which a convicted felon is disqualified from practicing law. We reject this construction. To the contrary, reading the statutory provision as a whole, the same language describes the time period during which a person may not practice law or hold an "office of honor, trust or profit." Therefore the period of disqualification is necessarily the same. Since a convicted felon regains the right to hold public office only upon completion of his or her sentence—including the period of mandatory parole—we should not interpret the statutory disqualification from the practice of law more narrowly.[7]

---

**5.** *Edwards v. People,* 196 P.3d 1138, 1143 (Colo. 2008); *People v. Norton,* 63 P.3d 339, 347 (Colo. 2003); *see People v. Luther,* 58 P.3d 1013, 1015 (Colo.2002) (stating that penalties for felony offenders include both an incarceration component and a mandatory parole component); *Craig v. People,* 986 P.2d 951, 959, 961–62 (Colo.1999) (holding that, while mandatory parole is a statutorily prescribed sentence component that attaches automatically to any sentence involving imprisonment, a plea-bargained sentence to "5 years D.O.C." referred only to the incarceration component of the sentence, not to the non-negotiable mandatory parole component); *People v. Davis,* 794 P.2d 159, 180–81 (Colo.1990) (holding death penalty aggravator requiring that, at the time defendant committed the crime, he or she was "under sentence of imprisonment" includes

the period of parole), *overruled on other grounds by People v. Miller,* 113 P.3d 743, 748 (Colo. 2005); *People v. Lucero,* 772 P.2d 58, 60 (Colo. 1989) (explaining that a parolee is constructively a prisoner of the state); *People v. Campbell,* 742 P.2d 302, 309 (Colo.1987) (characterizing a parolee as in "legal custody" for purposes of the Uniform Mandatory Disposition of Detainers Act).

**6.** We have sometimes characterized parole as "constructive custody." *See Lucero,* 772 P.2d at 60–61.

**7.** On the contrary, the General Assembly's decision not to explicitly restore the privilege of "practicing as an attorney in any of the courts of this state" upon sentence completion is consis-

¶ 15 Our analysis of similar language in the Colorado Constitution supports our construction of section 18–1.3–401(3). In *Danielson*, we examined article VII, section 10 of the Colorado Constitution to determine whether section 1–2–103(4), C.R.S. (2005)—which barred parolees from registering to vote or voting—was constitutional. 139 P.3d at 689–90. The constitutional provision provides that:

> [n]o person *while confined in any public prison* shall be entitled to vote; but every such person who was a qualified elector prior to such imprisonment, and who is released therefrom by virtue of a pardon, or *by virtue of having served out his full term of imprisonment,* shall without further action, be invested with all the rights of citizenship, except as otherwise provided in this constitution.

Colo. Const. art. VII, § 10 (emphasis added). Like section 18–1.3–401(3), article VII, section 10 defines both a time period of disqualification and an event marking the end of that time frame. In *Danielson*, we noted that, although parole did not exist at the time Colorado enacted its constitution, a person only completed the "full term of imprisonment" when he or she secured an unconditional release from prison accompanied by full restoration of the person's rights. 139 P.3d at 692. The General Assembly did not intend conditional release on parole—an extension of one's confinement intended to aid the reintegration of criminals into society—to be the sort of unconditional release the Colorado Constitution envisions. *Id.* at 692–93. On the contrary, we held that a person serving a sentence of parole has not served his or her full term of imprisonment within the meaning of article VII, section 10. *Id.* at 690.

¶ 16 Our holding in *Danielson* mirrors our conclusion over a hundred years ago in *People ex rel. Colorado Bar Ass'n v. Monroe* that the Colorado Constitution's denial of voting rights to a person "confined in any public prison" until that person has "served out his full term of imprisonment" encompasses parolees. 26 Colo. 232, 233, 57 P. 696,

696 (1899). In that case, which predated section 18–1.3–401(3) and its forerunners, we disbarred an attorney on parole for a felony conviction of embezzlement. *Id.* at 233–34, 57 P. at 696. The attorney had invoked article VII, section 10 in support of his assertion that the right to engage in the practice of law is a right of citizenship, and that, where one is sentenced for a crime, his pardon, or service of a full term of imprisonment, without further action, reinvests him with the right to practice law. *Id.* at 233, 57 P. at 696. Concluding that article VII, section 10 informs our oversight of the legal profession, we stated that the attorney had not yet served out his full term of imprisonment, but had simply been released from physical confinement on parole. *Id.* at 233, 57 P. at 696.

¶ 17 We presume the General Assembly is aware of the judicial precedent in an area of law when it legislates in that area, *Specialty Restaurants Corp. v. Nelson,* 231 P.3d 393, 403 (Colo.2010), and we invoke the on-point reasoning of *Danielson* and *Monroe* here. We hold that section 18–1.3–401(3)'s disqualification of a convicted felon from practicing law encompassing "the actual time of confinement or commitment to imprisonment or release from actual confinement on conditions of probation" and ending upon "discharge after completion of service of his or her sentence or after service under probation" applies equally to parolees and persons on probation pursuant to a felony conviction.

¶ 18 Miranda argues that section 18–1.3–401(3) applies to persons on probation but not those on parole. Reading parolees out of the scope of section 18–1.3–401(3) would produce the absurd result that parolees could freely practice law (unless we intervened in our regulatory capacity) while their counterparts on probation remained statutorily barred from doing so. In *Danielson*, we distinguished probationary status, which does not result in loss of voting rights, because probation is an alternative to a prison sentence not available to those convicted of serious crimes or certain multiple convictions. 139 P.3d at 693. Indeed, those grant-

tent with this court's authority over the conditions for admission or reinstatement to the prac-

tice of law. *See Colo. Sup. Ct. Grievance Comm. v. Dist. Ct.,* 850 P.2d 150, 152 (Colo.1993).

ed the privilege of probation enjoy greater rights, in general, than those on parole. *See, e.g., Samson,* 547 U.S. at 852–57, 126 S.Ct. 2193. Therefore, there is nothing incongruous about the Colorado Constitution denying voting rights to parolees, but not to probationers. By contrast, section 18–1.3–401(3) explicitly applies to those "release[d] from actual confinement on conditions of probation." Allowing parolees, but not probationers, to engage in the practice of law—though they have fewer rights, remain subject to return to the Department of Corrections' physical custody at any time for parole violations, and (like probationers) are on the path to rehabilitation but are not yet rehabilitated—makes no sense. We conclude that the legislature has used its police power to bar convicted felons from practicing law in our courts while they serve out their sentences. *See People v. Buckles,* 167 Colo. 64, 68, 453 P.2d 404, 406 (1968). As a matter of law, this punishment is in addition to the disciplinary actions we take to protect the public. *See id.* at 68, 453 P.2d at 406.

### C. Application to this Case

 ¶ 19 Michael T. Miranda is currently serving the mandatory parole portion of his sentence for vehicular homicide/DUI. Thus he cannot be reinstated at this time.

### III.

¶ 20 Accordingly, we reverse the Hearing Board's order reinstating Miranda to the practice of law.

Chief Justice BENDER does not participate.